586 So.2d 328 (1991)
In re ESTATE OF Lester PLATT, Deceased.
No. 74793.
Supreme Court of Florida.
October 3, 1991.
Samuel S. Smith and James R. George of Ruden, Barnett, McClosky, Smith, Schuster & Russell, P.A., Miami, for petitioners.
Harry G. Carratt of Morgan, Carratt and O'Connor, P.A., Ft. Lauderdale, for respondents.
Rohan Kelley of Rohan Kelley, P.A., Ft. Lauderdale, Florida; and William S. Belcher of Belcher & Fleece, P.A., St. Petersburg, amicus curiae for The Real Property, Probate and Trust Law Section of The Florida Bar.
*329 J. Thomas Cardwell of Akerman, Senterfitt & Eidson, Orlando, amicus curiae for Florida Bankers Ass'n.
OVERTON, Justice.
Petitioners, Patricia Platt Faulkner and Barbara Platt Swanson, children and residuary beneficiaries of the estate of Lester Platt, deceased, seek review of the Fourth District Court of Appeal's decision in In re Estate of Platt, 546 So.2d 1114 (Fla. 4th DCA 1989), in which the district court approved attorney's and administrator's fees computed solely on a percentage of the amount of Platt's $7,000,000 estate. The district court expressly found that the lodestar method[1] to compute attorney's fees "is not applicable to the determination of attorney's fees and personal representative fees under section 733.617, Florida Statutes (1987)." Id. at 1114.
We find conflict with Standard Guaranty Insurance Co. v. Quanstrom, 555 So.2d 828 (Fla. 1990), De Loach v. Westman, 506 So.2d 1142 (Fla. 2d DCA 1987), and Brady v. Williams, 491 So.2d 1160 (Fla. 2d DCA 1986).[2] For the reasons expressed, we quash the decision of the district court of appeal in the instant case.
The following are the pertinent facts. George A. Patterson, the attorney for the estate, and NCNB National Bank of Florida (NCNB) were appointed co-personal representatives on March 15, 1985, of the estate of Lester Platt, deceased. Platt was incompetent during the last two years of his life, and Patterson and NCNB managed his assets under a guardianship agreement, for which they were fully compensated. At the time of Platt's death, they were in control of his assets, and no marshaling of assets was necessary to administer his estate. Petitioners, as residuary beneficiaries of the estate, share the impact of any fees awarded.
At the commencement of the probate of the estate, Patterson and NCNB advised the beneficiaries that the personal representative fees and attorney fees charged would equal 4.5% of the value of the estate. Since the approximate value of the estate was $7,000,000, the proposed fees totaled $315,000. Petitioner Faulkner objected to the payment of a fee based on a percentage of the estate and requested that Patterson and NCNB maintain accurate time records for their services. Two years later, in closing the estate, Patterson and NCNB petitioned for attorney's and personal representative's fees totaling $489,877, or 6% of the estate.
Patterson petitioned for attorney's fees in the amount of $144,300 and sought $92,500 as his share of the personal representative fees. At the hearing on fees, Patterson testified that he had expended 274 total hours as attorney for the estate. This computes to an hourly rate of $526.64. Patterson also testified that his office staff had spent 155 hours on estate matters but that his fee of $144,300 was calculated on the basis of 2% of the estate rather than upon the time and labor expended.
Patterson testified that his usual hourly rate was $350, and his experts testified that $200 to $300 per hour was a reasonable fee for this type of service. At $350 an hour, the fee would have been $95,900. Further, the record reflects that typing and proofreading services made up the bulk of the 155 hours spent by Patterson's staff on the estate. Petitioners challenge the amount of compensable time Patterson spent on the estate and assert that only approximately 220 of the 274 hours were properly compensable because the remaining hours were expended in pursuit of Patterson's fee.
Patterson's first expert witness testified that he believed a fee of $140,000, approximately 2% of the value of the estate, would be a reasonable fee. The expert testified that the estate was valued at $7,000,000 and that Patterson had expended 274 hours on the estate. He explained that he did not believe that the lodestar method applied *330 but that, if he computed a fee under the lodestar method, Patterson would be entitled to $200 an hour, multiplied by a factor of 3, or a fee of $164,000. On cross-examination, he testified that $200 an hour would be a reasonable rate for a probate lawyer who is a member of the American College of Probate Counsel.
Patterson's second expert testified that a 3% attorney's fee would be reasonable for representing an estate where there is a corporate fiduciary and that he would seek to increase the percentage to 4% if other factors were present, such as a noncorporate fiduciary. The expert stated that, since this was a $7,000,000 estate, a reasonable attorney's fee for Patterson would be $210,000. He testified that his usual hourly fee was $150 to $200, but he believed that that amount was inadequate to handle estate matters. He further explained that, if he were employed strictly on an hourly basis, he would contemplate charging $300 per hour.
In response, petitioners' expert testified that, upon examining the file and time records, his range of a reasonable fee was between $58,000 and $70,000. The prime factor in his calculation of the attorney's fee was the number of hours expended. He testified that he used rates of $200 an hour and $250 an hour to arrive at his two alternative fees; that he multiplied the 235.8 hours of attorney time by $200 an hour, which computed to a figure of $47,160; that he multiplied the 149.5 hours spent by paralegals by $75 an hour, which he felt was a very reasonable fee for paralegals, to arrive at the figure of $11,212.50; and that he added these products together, resulting in his low fee of $58,372.50. He arrived at the high fee of $70,162.50 by using an hourly rate of $250 instead of $200.
Regarding the personal representative's fee, NCNB sought its fee solely upon its scheduled percentage rates.[3] NCNB did not present any evidence of hours expended or of what a reasonable hourly rate would be for such a corporate fiduciary. NCNB stated that, although it was requested to keep time records, it chose not to do so because of the administrative cost of keeping such records. NCNB sought a personal representative's fee of $203,077, plus $50,000 for unusual and extraordinary services. Experts from Sun Bank and Florida National Bank testified that it was customary practice for corporate fiduciaries to charge a personal representative's fee based on a sliding-fee rate schedule prepared by the bank. They stated that their personal representative fees in a comparable estate would have been greater than the fee sought by NCNB.
Patterson sought, in addition to his attorney's fee, a co-personal representative's fee of $92,500. Patterson's first expert testified that Patterson was entitled to a co-personal representative's fee equal to one-third to one-half of what the corporate fiduciary received as personal representative. Patterson's second expert testified that a reasonable co-personal representative's fee in this instance would be 1% of the probate estate. In response, petitioners' expert testified that a reasonable co-personal representative's fee for Patterson, based upon the work performed, would be $32,000.
The trial court entered an order expressly refusing to apply the principles set forth in Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985). In its order, the court noted that, in awarding compensation to the attorney and personal representative, it could utilize one or more of the criteria in section 733.617, Florida Statutes (1985). Regarding attorney's fees, the trial court determined that the fee of $144,300, based solely on a percentage of the estate, was reasonable. It further found that NCNB should receive a personal representative's fee of $203,077, calculated in accordance with the corporate fiduciary's rate card. The court denied the corporate fiduciary's request for an extra $50,000, finding insufficient evidence for this claim of extraordinary services. The court *331 granted Patterson a co-personal representative's fee of $67,692, an amount equal to one-third of NCNB's fee. On appeal, the Fourth District Court of Appeal affirmed the setting of fees based on a percentage of the estate, relying on its decision in In re Estate of Warwick, 543 So.2d 449 (Fla. 4th DCA 1989), quashed, 586 So.2d 327 (Fla. 1991).
The issue in this cause is whether section 733.617 allows "reasonable compensation" for attorneys and personal representatives to be computed solely on the basis of a fixed percentage of the amount of the probate estate.
To understand the legislative intent of section 733.617, it is important to review its legislative history. Prior to 1974, fees for personal representatives were established as a percentage of the amount of the estate, in accordance with section 734.01, Florida Statutes (1973).[4] That statute was repealed in 1974, and the authority for attorney's and personal representative's fees was placed in section 733.617, Florida Statutes (Supp. 1974). This statute read as follows:
733.617 Compensation of personal representatives and professionals providing services. 
(1) Personal representatives, attorneys, accountants, and appraisers are entitled to reasonable compensation.
(2) If a will provides for compensation of the personal representative and there is no contract with the decedent regarding compensation, the personal representative may renounce the provisions before qualifying and be entitled to reasonable compensation. A personal representative also may renounce his right to all or any part of the compensation. A renunciation of the fee shall be filed with the court.
(3) No compensation shall be paid to the personal representative, attorneys, accountants, or appraisers unless, prior to payment:
(a) All persons bearing the impact of the payment have consented to the compensation in a signed writing filed in the proceeding; or
(b) The court has ordered the payment following informal notice of the petition to all persons bearing the impact of the payment.
§ 733.617, Fla. Stat. (Supp. 1974). It is important to note that this statute contained no factors for the trial judge to consider in determining a reasonable fee.
Factors to be considered by a trial judge were added to section 733.617 in 1975. These factors coincide with the factors in the then-existing Disciplinary Rule 2-106(B) of The Florida Bar Code of Professional Responsibility. The statute, as then enacted, read as follows:
733.617 Compensation of personal representatives and professionals. 
(1) Personal representatives, attorneys, accountants, and appraisers and other agents employed by the personal representative shall be entitled to reasonable compensation. Reasonable compensation shall be based on:
(a) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the service properly.
(b) The likelihood that the acceptance of the particular employment will preclude other employment by the person.
(c) The fee customarily charged in the locality for similar services.
(d) The amount involved and the results obtained.
(e) The time limitations imposed by the circumstances.

*332 (f) The nature and length of the professional relationship with the decedent.
(g) The experience, reputation, diligence, and ability of the person performing the services.
(2) If a will provides for compensation of the personal representative either directly or conditionally and there is no contract with the decedent regarding compensation, he may renounce the provisions and be entitled to reasonable compensation. A personal representative also may renounce his right to all or any part of the compensation. A renunciation shall be filed with the court.
(3) No compensation shall be paid to the personal representative or attorneys, unless, prior to payment:
(a) All persons bearing the impact of the payment have consented to the compensation or the method of determining compensation in a signed writing filed in the proceeding; or
(b) The court has ordered the payment following notice of the petition to all persons bearing the impact of the payment.
(4) If the personal representative is a member of The Florida Bar and has rendered legal services in connection with his official duties, he shall be allowed a fee therefor, determined as provided in subsection (3).
§ 733.617, Fla. Stat. (1975). In 1976, this statute was amended to read as follows:
733.617 Compensation of personal representatives and professionals. 
(1) Personal representatives, attorneys, accountants, and appraisers and other agents employed by the personal representative shall be entitled to reasonable compensation. Reasonable compensation shall be based on one or more of the following:
(a) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the service properly.
(b) The likelihood that the acceptance of the particular employment will preclude other employment by the person.
(c) The fee customarily charged in the locality for similar services.
(d) The amount involved and the results obtained.
(e) The time limitations imposed by the circumstances.
(f) The nature and length of the professional relationship with the decedent.
(g) The experience, reputation, diligence, and ability of the person performing the services.
(2) If a will provides for compensation of the personal representative either directly or conditionally and there is no contract with the decedent regarding compensation, he may renounce the provisions and be entitled to reasonable compensation. A personal representative also may renounce his right to all or any part of the compensation. A renunciation may be filed with the court.
(3) If the personal representative is a member of The Florida Bar and has rendered legal services in connection with his official duties, he shall be allowed a fee therefor, determined as provided in subsection (1).
§ 733.617, Fla. Stat. (Supp. 1976). The statute as then enacted applied to the probate of this estate. The amendment in subparagraph (1) added to the second sentence the phrase "one or more of the following." The meaning of that phrase is in issue in this proceeding and is subsequently discussed. The newly amended statute also deleted paragraph (3) of its predecessor section 733.617, Florida Statutes (1975).
The statute was again amended in 1988. As it now exists, it is substantially consistent with rule 4-1.5(B) of the Rules Regulating The Florida Bar.[5] The only noteworthy change was in subsection (e), which expanded the consideration of the amount of money involved. Section 733.617(1)(e), Florida Statutes (1989), now reads: "The nature and value of the assets of the estate, *333 the amount of income earned by the estate, and the responsibilities and potential liabilities assumed by the person."
Petitioners, in challenging these fees, argue that the trial court erred by holding that the lodestar method was never applicable to a determination of attorneys' fees in probate cases. Petitioners reason that: (1) our recent decision in Quanstrom suggests the lodestar approach as a starting point; (2) section 733.617, Florida Statutes (1987), clearly does not preclude the use of the lodestar method; and (3) section 733.617 does not allow the computation of a reasonable fee based solely on a percentage of the value of the estate. Further, petitioners contend that the attorney's fee of $144,300, found by the trial court to be reasonable, is contrary to the manifest weight of the evidence contained in this record. Finally, petitioners claim that the award of a fee to NCNB for its services as co-personal representative based solely on a percentage set forth by its rate card, as well as the setting of a co-personal representative's fee for Patterson based on a percentage of NCNB's fee, was error because this type of percentage fee was abolished when section 733.617 was amended in 1975 and 1976.
In response, Patterson asserts that, since the lodestar approach is inapplicable in workers' compensation cases where fees are governed by section 440.34, Florida Statutes (1987), the lodestar approach should not be applicable under the provisions of section 733.617, Florida Statutes (1987). Patterson relies on the First District Court of Appeal's approval of attorney's fees in workers' compensation cases set in What An Idea, Inc. v. Sitko, 505 So.2d 497 (Fla. 1st DCA 1987), without the application of the lodestar approach. Patterson also draws an analogy to the inapplicability of the lodestar approach in condemnation proceedings, relying on Division of Administration v. Ruslan, 497 So.2d 1348 (Fla. 4th DCA 1986). Patterson next argues that the clause in section 733.617(1) which reads that "[r]easonable compensation shall be based on one or more of the following" allows an attorney to have his fee computed either on the basis of an hourly rate (lodestar approach) or on the basis of a percentage of the nature and value of the assets in the estate.
The Real Property, Probate and Trust Law Section of The Florida Bar has filed an amicus curiae brief in support of respondent. The amicus asserts that the provision of section 733.617(1) which states that "[r]easonable compensation shall be based on one or more of the following" allows the trial judge to determine the amount of reasonable compensation in various ways. It argues that this permits the trial court to determine a fee: (1) based solely on a percentage of the value of the estate; (2) computed on the basis of the lodestar method; or (3) computed using a combination of factors to reach a "hybrid determination based on the value of the estate assets and income and the time expended, applied against a market rate as well as other factors mentioned." The amicus also emphasizes that the risk of liability, exposure to malpractice, or surcharge in the probate of estates is an important additional factor that must be given effect under the statute. In its argument, the amicus claims that this factor is not otherwise considered in other attorney's fees cases. Further, the amicus requests that this Court make clear that a percentage of the value of the estate may be a permissible sole factor for determining attorney's fees.
We find it important to emphasize that one of the primary reasons for the adoption of the "lodestar" method in Rowe was the fact that someone other than the client who received the services would be required to pay the attorney's fees. Rowe adopted the lodestar method, which, to a large extent, uses the criteria from the Code of Professional Responsibility to establish a fair and reasonable fee.
According to Rowe, the first step requires the court to determine the number of hours reasonably expended in providing the service. "Reasonably expended" means the time that ordinarily would be spent by lawyers in the community to resolve this particular type of dispute. It is not necessarily the number of hours actually expended by counsel in the case. Rather, the court must consider the number of *334 hours that should reasonably have been expended in that particular case. The court is not required to accept the hours stated by counsel. In this respect, the magnitude of the case should be a consideration. For example, it will not ordinarily be reasonable to spend as much legal time on a case as the amount of money in dispute. The lawyer could not reasonably charge the client that much, and the fee could not be justified simply because someone else is required to pay it. We have recognized exceptions to that general rule. Quanstrom; State Farm Fire & Casualty Co. v. Palma, 555 So.2d 836 (Fla. 1990).
The second step requires the court to determine a reasonable hourly rate for the services of the attorney. A reasonable hourly rate takes into account the rate charged in the community by lawyers of comparable skill, experience, and reputation for similar services. Again, the trial court is not bound to accept the hourly rate asserted by counsel who performed the service. The court in this instance determines the appropriate hourly rate for the services performed. It is important that this determination be based on the fact that the fees will be paid regardless of the result.
The number of hours reasonably expended in the first step, multiplied by the reasonable hourly rate determined in the second step, produces the lodestar method, which should result in a uniform objective basis for the award of attorney's fees in situations where the payor has no part in the fee arrangement.
The contingency risk factor, identified in many cases as a "multiplier," was explained in Rowe and modified in Quanstrom. This factor was created to compensate attorneys for those cases where there was a risk of nonpayment.[6] In other words, this factor was added to the lodestar formula to compensate attorneys who receive no fees if they do not prevail.
First, we reject respondent's contentions that the lodestar approach is not applicable because it does not apply in workers' compensation or condemnation proceedings. The statutes in those two types of cases are distinctive. In workers' compensation cases, section 440.34, Florida Statutes (1987), specifically sets forth how the fee should be calculated. It states, in pertinent part:
Except as provided by this subsection, any attorney's fee approved by a deputy commissioner shall be equal to 25 percent of the first $5,000 of the amount of the benefits secured, 20 percent of the next $5,000 of the amount of the benefits secured, and 15 percent of the remaining amount of the benefits secured. However, the deputy commissioner shall consider the following factors in each case and may increase or decrease the attorney's fee if, in his judgment, the circumstances of the particular case warrant such action:
(a) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
(b) The likelihood, if apparent to the claimant, that the acceptance of the particular employment will preclude employment of the lawyer by others or cause antagonisms with other clients.
(c) The fee customarily charged in the locality for similar legal services.
(d) The amount involved in the controversy and the benefits resulting to the claimant.
(e) The time limitation imposed by the claimant or the circumstances.
(f) The nature and length of the professional relationship with the claimant.
(g) The experience, reputation, and ability of the lawyer or lawyers performing services.
(h) The contingency or certainty of a fee.
§ 440.34(1), Fla. Stat. (1987). This statute specifically mandates that the attorney's fee be initially calculated as a percentage of the award and then increased or diminished by consideration of other factors.
*335 The statute pertaining to eminent domain proceedings takes a different approach. While allowing consideration of the benefit to a client, it specifically forbids percentage fees and requires consideration of traditional factors. The statute mandates a finding regarding attorneys' time and labor (lodestar method) and takes into consideration offers of judgment. The basic lodestar factors are contained within these criteria. That statute reads as follows:
73.092 Attorney's fees.  In assessing attorney's fees in eminent domain proceedings, the court shall consider:
(1) Benefits resulting to the client from the services rendered. However, under no circumstances shall the attorney's fees be based solely on a percentage of the award.
(2) The novelty, difficulty, and importance of the questions involved.
(3) The skill employed by the attorney in conducting the cause.
(4) The amount of money involved.
(5) The responsibility incurred and fulfilled by the attorney.
(6) The attorney's time and labor reasonably required adequately to represent the client. The condemnee's attorney shall submit to the condemning authority and to the court complete time records and a detailed statement of services rendered by date, nature of services performed, time spent performing such services, and costs incurred at least 30 days prior to a hearing to assess attorney's fees under this section.
(7) Where an offer of judgment made by the petitioner, pursuant to the Florida Rules of Civil Procedure, is either rejected or expires and the verdict or judgment is less than or equal to the offer of judgment, no attorney's fees or costs shall be awarded for time spent by the attorney or costs incurred after the time of rejection or expiration of the offer. Where an offer of judgment is accepted or the verdict exceeds the offer of judgment, attorney's fees and costs shall be determined in accordance with subsections (1)-(6). An offer of judgment shall not be made by the petitioner until the expiration of 180 days from the filing date of a petition under this chapter or chapter 74.
(8) The offer of judgment shall be accepted or rejected within 30 days, or at such other time as the court shall provide, or it shall be deemed to be rejected.
(9) For the purposes of Florida Rule of Civil Procedure 1.442, a condemning authority shall be considered a party defending against a claim at any time after the entry of an order of taking in any condemnation action.
§ 73.092, Fla. Stat. (1989). Furthermore, in Quanstrom, we stated:
Further, in eminent domain cases, the purpose of the award of attorney's fees is to assure that the property owner is made whole when the condemning authority takes the owner's property. Jacksonville Expressway Auth. v. Henry G. Du Pree Co., 108 So.2d 289 (Fla. 1958). In these cases, the attorney is assured of a fee when the action commences. Similarly, an attorney's fee is generally assured in estate and trust matters. Under ordinary circumstances, a contingency fee multiplier is not justified in this category, although the basic lodestar method of computing a reasonable attorney's fee may be an appropriate starting point.

555 So.2d at 835 (emphasis added, footnotes omitted). Determining a reasonable hourly rate for an attorney for a particular type of legal service and the number of hours that should be expended by the attorney in providing those services is an appropriate starting point for the computation of a reasonable fee in estate proceedings, eminent domain proceedings, and most other proceedings.
If the legislature had desired to set the fees in accordance with a sliding-percentage scale, plus fees for extraordinary services, it could have retained or modified the prior statute. It did not do so; rather, when it amended the statute, it changed from a specific sliding-percentage scale for personal representatives to "reasonable" fees for all professionals and agents performing services for the estate. The key *336 word in the present statute is that the fee should be "reasonable." That means a reasonable fee for the public as well as for the lawyer. We reject respondent's and amicus's construction of the statute which would allow one judge to set reasonable fees in an estate proceeding solely on the basis of a percentage value of the estate, a second judge to set attorney's fees in a similar estate proceeding based on the lodestar method, and a third judge to set attorney's fees in a similar estate proceeding by using a combination of both. "Reasonable" also means that the fee should be consistent with other fees set in similar cases. Similar facts require the application of similar factors. There is no equal protection for either the public or the lawyer if we allowed a method of assessing attorneys' fees that produced different results for the same type of case, depending on the personal preference of the trial judge.
We reach this conclusion because we construe section 733.617(1), Florida Statutes (Supp. 1976), requiring that reasonable compensation be based on "one or more of the following" factors to mean the applicable factor or factors for the particular professional or agent employed by the estate. The statute is broad in its application to various types of professionals and agents who may be employed by the estate. Consequently, the factors that would apply to each category are not the same. We find that it would be unreasonable to hold that the legislature intended that reasonable fees could be arrived at by allowing the use of different factors for the same category of professionals for the same type of service.
Under the statute in existence at the time of this case, trial judges were required to take into account each of the factors applicable to the particular case before them. Although the amount of the probate estate is a factor, it was not intended to be the sole controlling factor. We must recognize that in many estate proceedings, as in this instance, the persons who bear the cost of the fees were not in a position to select the attorney for the estate. In the instant case, we find that the attorney's fee of $144,300 is not justified by the evidence in this record. It also appears that a number of the hours for which Patterson claimed compensation are not compensable because the hours were spent collecting his fee.[7] Further, it is unclear from the record whether the services performed by the attorney's staff are properly compensable as additional items or whether the cost of these services should be included in the attorney's hourly rate. Usually, secretarial work is included in an attorney's hourly fee while paralegal work may be charged separately. We are unable to make a proper determination of a reasonable attorney's fee on the basis of the record before us; consequently, we must remand for that purpose.
We do note that the use of a multiplier by one of Patterson's expert witnesses was clear error. The purpose of a multiplier is to compensate the lawyer for the risk of nonpayment of a fee. See Rowe, 472 So.2d at 1151. That factor is not present in most probate cases.
NCNB's co-personal representative's fee was based solely on its published fee schedule. This schedule is based upon a percentage of the value of the estate. The Florida Legislature, in 1974, abolished percentage fees for personal representatives' fees. We reject the argument that percentage fees must be found appropriate in this instance because they are the only basis upon which fees are customarily charged for those services in this community. To adopt that view means that entities who serve as corporate fiduciaries in a particular community can, by their actions, control the method and amount of compensation of personal representatives for that area. They, rather than the legislature or the court, would determine what is a reasonable fee.
We agree with our sister court in Maine when it addressed a statute virtually the same as section 733.617, Florida Statutes (1987), in Estate of Davis, 509 A.2d 1175 (Me. 1986). That court held that when the legislature adopted section 3-719 of the *337 Maine Probate Code,[8] it intended to abolish percentage fees. The court stated that reasonable compensation must be based on the services performed and that the amount and value of the estate may be a factor that the court may consider, but it should not be the exclusive factor used to determine a reasonable fee.
Section 733.617, Florida Statutes (1987), mandates that an independent judicial officer set personal representatives' fees. A fee schedule, prepared in advance by the fiduciary and not agreed to by the party who must pay the fee, should not be the sole determining factor of a reasonable fee for a personal representative. To have a co-personal representative, who is also the attorney for the estate, receive a co-personal representative's fee computed solely on the basis of a percentage of the corporate fiduciary's co-personal representative's fee is illogical since the fee has no reasonable relationship to the services performed by the co-personal representative who serves with the corporate fiduciary. We find that such a computation is clearly contrary to the intent and purpose of section 733.617, Florida Statutes (1987).
We recognize that corporate fiduciaries may find base rate schedules useful for their estate and probate work. A corporate fiduciary should be able to use a percentage rate schedule as a guide during negotiations with a prospective user of the services. The problem arises, however, when there is no agreement. While rate schedules are a factor that may be considered in determining a reasonable fee at the end of the service, they should not be presented as the sole factor for determining a reasonable fee absent an agreement. We believe the legislature intended for the trial judge to independently determine a reasonable fee.
For the reasons expressed, we quash the decision of the district court and direct that this cause be remanded to the trial court for further proceedings to calculate the attorney's fees and personal representatives' fees in accordance with the views expressed in this opinion.
It is so ordered.
SHAW, C.J. and BARKETT, GRIMES and KOGAN, JJ., concur.
McDONALD, J., dissents.
NOTES
[1] See Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145, 1150 (Fla. 1985), for a discussion of the lodestar method for assessing reasonable attorney's fees.
[2] We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
[3] NCNB's fee schedule for estate settlement to be charged on date of death, value of estate assets subject to court jurisdiction, reads as follows: "4% on first ... $200,000; 3% on the next ... $800,000; and 2.5% on all over ... $1,000,000."
[4] The pertinent portions of section 734.01, Florida Statutes (1973), read as follows:

(1) A personal representative shall be allowed all necessary expenses and attorney's fees paid in the care, management and settlement of the estate. A personal representative shall be allowed commissions upon the amount of the estate, real and personal, accounted for by him as compensation for his ordinary services as follows:
(a) For the first one thousand dollars at the rate of six per cent; all above that sum and not exceeding five thousand dollars at the rate of four per cent; and all above five thousand dollars at the rate of two and one-half per cent.
[5] Rule 4-1.5(B)(4) reads:

(4) The significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained[.]
[6] For other situations where the contingency risk factor is applicable, see State Farm Fire & Casualty Co. v. Palma, 555 So.2d 836 (Fla. 1990).
[7] Crittenden Orange Blossom Fruit v. Stone, 514 So.2d 351 (Fla. 1987).
[8] Section 3-719 of the Maine Probate Code is identical to section 3-719 of the Uniform Probate Code, upon which section 733.617, Florida Statutes (1987), is based.