633 So.2d 1103 (1994)
FLORIDA BIRTH-RELATED NEUROLOGICAL INJURY COMPENSATION ASSOCIATION, Appellant,
v.
Maria Theodora CARRERAS, a minor, and Flor Carreras, Appellees.
No. 92-1384.
District Court of Appeal of Florida, Third District.
February 15, 1994.
Rehearing Denied March 22, 1994.
*1105 Taylor, Brion, Buker & Greene and Wilbur E. Brewton and Kelly Brewton Plante, Tallahassee, for appellant.
James C. Blecke, Miami, for appellees.
Before COPE, LEVY and GODERICH, JJ.
COPE, Judge.
The Florida Birth-Related Neurological Injury Compensation Association (NICA)[1] appeals from a final order of the Judge of Compensation Claims (JCC) awarding the claimants attorney's fees in the amount of $90,000. We reverse.
Flor Carreras' daughter, Maria Carreras, was born with severe brain damage. Ms. Carreras' counsel filed a petition for compensation under the Florida Birth-Related Neurological Injury Compensation Plan, sections 766.301-.316, Florida Statutes (1991). NICA conducted a physical examination of the infant. Seven weeks after the claim was filed, NICA accepted the claimants' claim, without dispute, as compensable under the NICA statute. Certain payment items were disputed, requiring hearings and negotiation. Those issues were resolved and a stipulation was prepared. Pursuant to the statute, the JCC entered an order approving the stipulation, but retained jurisdiction to set the attorney's fees to be paid to the claimants' counsel.[2]
After hearings on the claimants' motion for attorney's fees, the JCC entered an order on December 6, 1991 holding that 300 hours was a reasonable number of hours to spend on this case and that $300.00 per hour was a reasonable hourly rate to be paid to the attorneys, thereby awarding $90,000 in attorney's fees. NICA has appealed.
The NICA program is a no-fault plan which provides benefits where there has been a birth-related neurological injury. In general, the plan applies where there has been an injury to the brain or spinal cord of an infant caused by oxygen deprivation or mechanical injury during labor or delivery, which renders the infant permanently and substantially mentally and physically impaired. See § 766.302(2), Fla. Stat. (1991). If the infant's injury satisfies the statutory definition, then the infant qualifies for financial benefits. Id. §§ 766.309, 766.31. The claimant need not establish any fault on the part of a health care provider. Id. §§ 766.301(2), 766.309.
Under the NICA statute, the financial benefits include expenses for care and treatment, as well as periodic payments to the parents or guardians. Id. § 766.31(1)(a), (b). The funds for these financial benefits are obtained from assessments on physicians and hospitals. Id. § 766.314. The NICA assessments constitute a tax. Coy v. Florida Birth-Related Neurological Injury Compensation Plan, 595 So.2d 943, 945 (Fla.), cert. denied, ___ U.S. ___, 113 S.Ct. 194, 121 L.Ed.2d 137 (1992). NICA is, therefore, administering public funds.
Turning to the controversy now before us, the NICA statute authorizes an award of reasonable attorney's fees incurred in connection with the filing of a claim. The statute provides:
Upon determining that an infant has sustained a birth-related neurological injury and that obstetrical services were delivered by a participating physician at the birth, the judge of compensation claims shall make an award providing compensation for the following items relative to such injury:
* * *

*1106 (c) Reasonable expenses incurred in connection with the filing of a claim under ss. 766.301-766.316, including reasonable attorney's fees, which shall be subject to the approval and award of the judge of compensation claims. In determining an award for attorney's fees, the judge of compensation claims shall consider the following factors:
1. The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal services properly.
2. The fee customarily charged in the locality for similar legal services.
3. The time limitations imposed by the claimant or the circumstances.
4. The nature and length of the professional relationship with the claimant.
5. The experience, reputation, and ability of the lawyer or lawyers performing services.
6. The contingency or certainty of a fee.
Section 766.31(1), Fla. Stat. (1991) (emphasis added). The JCC conducted an attorney's fee hearing, made findings as to each statutory factor, and computed a lodestar figure. The JCC considered the claimants' request for a multiplier, but concluded that a multiplier should not be awarded because there was little risk of nonrecovery in the case. The JCC then awarded an attorney's fee based on the statutory factors.
NICA first contends that Standard Guaranty Insurance Co. v. Quanstrom, 555 So.2d 828 (Fla. 1990), has no application here and that it was error to consider awarding a contingency multiplier. Subsequent to the date of the order in this case, the Florida Supreme Court said:
Where the legislature is silent on the factors it considers important in determining a reasonable fee, courts may look to the criteria enumerated in rule 4-1.5 of the Rules Regulating The Florida Bar, and may apply Rowe[[3]] risk multipliers where appropriate. See Quanstrom. However, where, as here, the legislature specifically sets forth the criteria it deems will result in a reasonable award and will further the purpose of the fee-authorizing statute, only the enumerated factors may be considered.
Schick v. Department of Agriculture & Consumer Serv's, 599 So.2d 641, 643-44 (Fla. 1992) (footnote omitted).
In the present case section 766.31 enumerates the factors to be considered.[4] The JCC confined his attention to the statutory factors, and was correct in doing so. We note that one of the statutory factors to be considered is the "contingency or certainty of a fee." § 766.31(1)(c)(6), Fla. Stat. (1991). This is therefore one factor to be considered in setting a reasonable fee. The JCC reasoned that where the "contingency or certainty of a fee" is a statutory factor, this means that the case is eligible for a Quanstrom contingency multiplier. On that basis the JCC considered awarding a multiplier.
Although it is a close question, we conclude that the Quanstrom contingency multiplier is not applicable here. A reasonable argument can be made that whenever the fee setting statute contains a "contingency or certainty of a fee" factor, the Quanstrom contingency multiplier should simply be plugged in. This approach offers the advantage of incorporating a known body of jurisprudence, which can be of some assistance in evaluating the certainty or uncertainty of recovery.
However, the Quanstrom and Rowe multipliers were adopted in the context of fault-based litigation. In that context the Quanstrom multiplier allows multiplication of the attorney's fee by a factor of up to 2.5. 555 So.2d at 834. The NICA program by contrast is a no fault system. It contemplates routine claim processing where eligibility determinations should ordinarily be straightforward. The major hurdle in a NICA petition is the determination of eligibility, and litigation *1107 over eligibility should be the exception rather than the rule. Accordingly, it is our conclusion that a Quanstrom contingency multiplier is not to be considered in NICA cases. Instead, the "contingency or certainty of a fee" element is one factor to be weighed against the other statutory factors. It allows the trier of fact the flexibility to make an adjustment in the exceptional case where there is a genuinely substantial risk of nonrecovery.
Although a Quanstrom contingency multiplier should not have been considered, the error was entirely harmless. On the merits the JCC found there had been little risk that the claim would be denied, and consequently little risk of nonpayment. The JCC declined to make any contingency adjustment.
Although Quanstrom does not supply the fee-setting criteria in this case, there is one respect in which it has relevance here. Referring to the lodestar method, the Florida Supreme Court has said:
Determining a reasonable hourly rate for an attorney for a particular type of legal service and the number of hours that should be expended by the attorney in providing those services is an appropriate starting point for the computation of a reasonable fee in estate proceedings, eminent domain proceedings, and most other proceedings.

In re Estate of Platt, 586 So.2d 328, 335 (Fla. 1991) (emphasis added). We agree with the JCC's conclusion that the NICA statute lends itself to calculation of reasonable hours and reasonable hourly rate by use of the lodestar method.
NICA next contends that the JCC should not have made any award of attorney's fees for the time spent litigating the amount of attorney's fees. Recognizing that this was likely to be a point on appeal, the JCC made a specific finding that the fee award included payment for 69.1 hours devoted to litigating the amount of attorney's fees. This represented 23 percent of the total hours approved by the JCC.
NICA's point is well taken. The Florida Supreme Court has recently addressed this issue under a different statute in State Farm & Casualty Co. v. Palma, 629 So.2d 830 (Fla. 1993). There, the court looked to the text of the applicable statute and found that the statutory language did not support such an award. Id. at 831-833. Similarly, in the present case the statute provides for attorney's fees "incurred in connection with the filing of a claim under ss. 766.301-766.316... ." § 766.31(1)(c), Fla. Stat. (1991). As was true in Palma, we do not believe that the statutory language reasonably includes attorney's fees for litigating over the amount of attorney's fees.
We also note that the no fault NICA system is one comparable to the workers' compensation system. There, too, attorney's fees are not awardable "to cover the time spent by the attorney in establishing the amount of the fee... ." Crittenden Orange Blossom Fruit v. Stone, 514 So.2d 351, 353 (Fla. 1987). Finally, given that NICA is tax-funded, fees for litigating the amount of fees should not be allowed absent a very clear statement of legislative intent to do so. The corresponding portion of the award must therefore be eliminated.[5]
NICA next contends that the award of $300 per hour in this case was excessive and not supported by competent substantial evidence. We agree.
The root of the difficulty originates in the JCC's finding regarding the "fee customarily charged in the locality for similar legal services." § 766.31(1)(c)(2), Fla. Stat. (1991). The JCC found that the customary fee was $400 per hour. The JCC then discounted the $400 per hour figure to $300 per hour, on the theory that this was not a particularly difficult case.
*1108 In our view the JCC misapprehended the legal standard for the statutory factor, "[t]he fee customarily charged in the locality for similar legal services." Id. This factor is the starting point for setting hourly rates. It is designed to provide a reference point by determining, as a factual matter, what the customary rate is in the relevant community for the same or similar legal services. For lodestar purposes, the relevant inquiry is to determine the prevailing rate, or range of rates, where the fee basis is hourly billing for time worked.[6]See In re Estate of Platt, 586 So.2d at 334. Once the hourly customary fee is determined, the JCC then considers the other applicable statutory factors in order to arrive at the approved reasonable hourly rate for the case.
At the time of the hearing below, there had been few NICA cases. Given insufficient experience with NICA, it was permissible to inquire into hourly rates paid for work that could be deemed reasonably comparable, such as workers' compensation or medical malpractice, where the nature of the expertise and legal skills required are similar enough to provide a useful point of comparison.
At the fee hearing, claimants and their experts uniformly testified that they requested approval of a $400 per hour rate for this case. For the most part claimants' witnesses conceded that the $400 per hour figure was subjective. They readily conceded that no one who is performing comparable work on an hourly basis would charge a client $400 per hour, or even $300 per hour, for the services rendered in this case. In terms of hourly rates actually being charged to paying clients, the testimony ranged from $100 per hour to $250 per hour.
The JCC made a finding that the fee customarily charged in the locality for similar services was $400 per hour. This figure is clearly excessive and wholly unsupported by any evidence. No witness testified to anything like $400 per hour as being an actual hourly billing rate. The JCC should have entered a finding which correlated to real world hourly rates in NICA cases (to the extent such information was available) and to other hourly legal work which was similar enough to serve as a useful basis for comparison. After setting that benchmark, the JCC should then have applied the other relevant statutory factors to come up with the approved hourly rate for the case. In so doing, "the trial court is not bound to accept the hourly rate asserted by counsel who performed the service. The court in this instance determines the appropriate hourly rate for the services performed." In re Estate of Platt, 586 So.2d at 334. Furthermore, expert opinion is not binding on the trier of fact, Baruch v. Giblin, 122 Fla. 59, 64, 164 So. 831, 833 (1935), Miller v. First American Bank & Trust, 607 So.2d 483, 485-86 (Fla. 4th DCA 1992), and "[t]he opinion of an expert witness does not constitute proof that the facts necessary to support the conclusion exist." Mercy Hospital, Inc. v. Johnson, 431 So.2d 687, 688 (Fla. 3d DCA) (citation omitted), review denied, 441 So.2d 632 (Fla. 1983).
Since there must be further proceedings, we comment on two of the arguments made by claimants in support of the requested hourly rate. Claimants asserted, among other things, that a higher fee was justified because this was one of the first cases processed through the NICA system. They argued that this justified enhancement of the hourly rate under the portion of the statute referring to the "novelty and difficulty of the questions involved... ." § 766.31(1)(c)(1), Fla. Stat. (1991). The case law on this point is to the contrary. Generally, where counsel is qualified to undertake particular work, the fact that the attorney encounters a new or difficult issue results in counsel having to spend more time on the problem. Instead of being reflected in hourly rate, "[t]he `novelty and difficulty of the question involved' should normally be reflected *1109 by the number of hours reasonably expended on the litigation." Florida Patient's Compensation Fund v. Rowe, 472 So.2d at 1150.
In the proceedings below, claimants also made an effort to correlate the requested fee with the amount of financial benefits obtained for the claimants. Claimants' counsel reasoned that about $250,000 in benefits had been awarded thus far, and that a 40 percent contingency would result in a $100,000 fee. It was on this basis, in part, that claimants' counsel argued for a $400 per hour rate.
The lodestar method does not permit the translation of contingent fee percentages into hourly rates.[7] Instead, the lodestar case law contemplates that the trier of fact will ascertain fees customarily charged using an hourly fee basis, and then make adjustments thereto. The contingency or certainty of a fee is one factor which is allowed to be considered under the present statute, although the JCC in this case correctly found that there was little risk of nonpayment and that this factor did not warrant an adjustment.
There is a second reason why claimants' argument on this point was impermissible. The statutory criteria for awarding a NICA attorney's fee were adopted in 1989. Ch. 89-186, § 5, Laws of Fla. The criteria in many respects are parallel to those spelled out in Rule 4-1.5, Rules Regulating The Florida Bar. Rule 4-1.5 supplies the fee-setting criteria adopted in Quanstrom. See 555 So.2d at 830 n. 3.
For NICA fee setting, however, it is noteworthy that the legislature omitted the following two fee setting guides of Rule 4-1.5:
(2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;
... .
(4) the significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained ... .
R.Reg.Fla.Bar 4-1.5(b)(2), (4) (emphasis added).
It is reasonably clear that the legislature viewed NICA as a relatively simple no-fault process for the care of infants with very severe, very expensive, permanent disabilities. See § 766.301, Fla. Stat. (1991). The process of qualifying an infant for an award does not require a showing of fault and should ordinarily be accomplished without adversary litigation. The compensatory awards will, however, routinely be large, especially in comparison with the time expended in the claim process. The omission of the "amount involved in" and "results obtained" factors reflect a legislative concern that consideration of "amount involved" and "results obtained" would unfairly inflate the fee awards. It was therefore impermissible to argue that claimants' attorney's fee should be set at approximately 40 percent of the compensatory award.
NICA next contends that the amount of hours approved for pre-petition work was excessive. We agree. The statute authorizes attorney's fees "incurred in connection with the filing of a claim under ss. 766.301-766.316... ." § 766.31(1)(c), Fla. Stat. (1991). The statute contemplates a reasonable allowance for the time necessary to investigate the NICA claim and prepare the NICA petition. Claimants' counsel concede that in the pre-petition phase, they had several other responsibilities to perform for their client which did not relate to the NICA petition. The NICA statute contains a "bad faith" exception which allows the filing of a civil suit in lieu of a NICA petition. Id. § 766.303(2). Counsel conceded that they investigated that alternative. Pre-petition time was included for consultation with three experts whose opinions claimants' counsel declined to disclose and whose work was not utilized in connection with the petition. Plainly, the exploration of the possibility of opting out of NICA through the "bad faith" exception or otherwise[8] is not, as the statute *1110 requires, work performed "in connection with the filing of a claim... ." Id. § 766.31(1)(c). On remand the noncompensable items shall be deducted from the allowance for hours worked.
NICA next argues that the JCC should have eliminated the duplicate time involved in communication between co-counsel in the case. The claimants' original counsel elected to enlist co-counsel from another firm who had considerable experience in cases involving infant brain injury. A co-counsel arrangement was agreed to, in which each counsel performed part of the work. Over the course of the case, this resulted in a significant number of hours being reflected on counsels' respective time sheets as time communicating with each other. Such duplicate time should be eliminated. See Tomaino v. Tomaino, 629 So.2d 874 (Fla. 4th DCA 1993); Miller v. First American Bank & Trust, 607 So.2d at 484-85; Adams v. Adams, 376 So.2d 1204, 1206 (Fla. 3d DCA 1979), cert. denied, 388 So.2d 1109 (Fla. 1980). The JCC eliminated some, but not all, of this time. While it is claimants' prerogative to use co-counsel, we do not think that the intercommunication time can be fairly charged against NICA.
Finally, NICA argues that the time allowances for some of the substantive work was excessive. NICA points out that the infant's eligibility for NICA was never disputed and a prompt eligibility ruling was made. NICA argues that much of the application process was ministerial and that the hours reasonably expended should have been much lower.
Claimants' counsel counter that although the infant was promptly ruled eligible, there were disagreements regarding the compensability of some of the items contained in the claim, which required resolution by hearings before the JCC. Further, since claimants are foreign nationals,[9] there were complications in arranging to have the child returned to Florida for physical examination, and there was a material issue regarding the exchange rate to be utilized for reimbursing expenditures in claimants' home country, which expenditures were very substantial. On all of these issues, claimants' position proved to be successful. Furthermore, this case went through the system at a time when NICA had not promulgated forms and there were few if any established procedures.
Under the "hour-setting" portion of the lodestar computation, it is important to distinguish between "hours actually worked" versus "hours reasonably expended." In the present case, as in most lodestar cases, the parties and the trier of fact agreed that claimants' counsel actually worked the number of hours they reported. "Hours actually worked" is not the issue. The objective instead is for the trier of fact
to determine the number of hours reasonably expended in providing the service. `Reasonably expended' means the time that ordinarily would be spent by lawyers in the community to resolve this particular type of dispute. It is not necessarily the number of hours actually expended by counsel in the case. Rather, the court must consider the number of hours that should reasonably have been expended in that particular case. The court is not required to accept the hours stated by counsel.
In re Estate of Platt, 586 So.2d at 333-34 (emphasis in original). The trier of fact must determine a reasonable time allowance for the work performed  which allowance may be less than the number of hours actually worked. Such a reduction does not reflect a judgment that the hours were not worked, but instead reflects a determination that a fair hourly allowance is lower than the time put in.
As was stated in the context of a different statute in In re Estate of Platt, "The key word in the present statute is that the fee should be `reasonable.' That means a reasonable fee for the public as well as for the lawyer... . `Reasonable' also means that the fee should be consistent with other fees set in similar cases." Id. at 335-36. In finding that there is error in the present *1111 attorney's fee award, we do not mean to suggest any question at all about the professional competency of the counsel involved, nor the fact that they obtained a substantial benefit for their clients in a professional manner. The goal instead is to arrive at a compensatory figure for services performed which is appropriate and fair to payor as well as payee, after considering the statutory factors. We remand for a new hearing in light of the principles stated here.
The order under review is reversed and the cause remanded for further proceedings consistent herewith.
NOTES
[1] See § 766.302(1), Fla. Stat. (1991).
[2] At the time of the proceedings below, the statute provided that "[t]he judge of compensation claims shall hear and determine all claims filed pursuant to ss. 766.301-766.316... ." § 766.304, Fla. Stat. (1991). Effective in 1993, the statute was changed to provide for administrative adjudication by hearing officers of the division of administrative hearings. Ch. 93-251, §§ 2-3, Laws of Fla.
[3] Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985), modified, Standard Guar. Ins. Co. v. Quanstrom, 555 So.2d 828 (Fla. 1990).
[4] The statutory factors are similar to those enumerated in Rule 4-1.5, Rules Regulating The Florida Bar, but some have been reworded and, as explained later in this opinion, two have been omitted: Rules 4-1.5(b)(2) and (4).
[5] The JCC's order indicates that NICA argued below that claimants were not entitled to an attorney's fee at all. NICA contended that a fee should not be awarded unless NICA denied the claim. That position was wholly incorrect under the wording of the statute and NICA has abandoned it here. Under the logic of Palma, and Crittenden Orange Blossom Fruit v. Stone, 514 So.2d at 353, time devoted to the question of entitlement to an attorney's fee is compensable.
[6] The criterion is not satisfied by attempting to convert contingent fee recoveries to an hourly basis. The case law recognizes that "attorneys taking contingent fee cases are entitled to a higher than usual reimbursement in successful contingency fee cases, which would offset their other losses." Lane v. Head, 566 So.2d 508, 510 (Fla. 1990). Making a calculation of successful recoveries would therefore distort the hourly rate. The analysis must be confined to hourly fee basis cases.
[7] See supra note 6.
[8] Claimants investigated whether to challenge the constitutionality of the NICA statute, but decided not to do so. No issue of constitutionality is presented by the present case. Claimants testified below that they made no claim for time expended on the issue of constitutionality.
[9] Claimants are Costa Rican nationals. The infant was born in Florida, at which time the injury occurred.