441 So.2d 627 (1983)
GULFSTREAM PARK RACING ASSOCIATION, INC., Petitioner,
v.
DEPARTMENT OF BUSINESS REGULATION, et al., Respondents.
DEPARTMENT OF BUSINESS REGULATION, et al., Petitioners,
v.
GULFSTREAM PARK RACING ASSOCIATION, INC., Respondent.
Nos. 64186, 64257.
Supreme Court of Florida.
December 1, 1983.
David S. Romanik of Landefeld & Romanik, Hollywood, for petitioner/respondent.
*628 David M. Maloney, Deputy General Counsel, Dept. of Business Regulation, Tallahassee, for respondents/petitioners.
Edward S. Jaffry and William L. Grossenbacher of Horne, Rhodes, Jaffry and Horne, Tallahassee, for Hialeah, Inc.; and James C. Pilkey of Taylor, Brion, Buker & Greene, Miami, for Tropical Park, Inc., amici curiae.
PER CURIAM.
Gulfstream Park Racing Association, Inc. v. Department of Business Regulation, 443 So.2d 113 (Fla. 3d DCA 1983), is before us because of express and direct conflict with Hialeah, Inc. v. Gulfstream Park Racing Association, Inc., 428 So.2d 312 (Fla. 4th DCA 1983). We have jurisdiction pursuant to article V, section 3(b)(3), Florida Constitution. We approve the decision of the Third District Court of Appeal.
Judge Pearson, writing for the majority in Gulfstream, observed, "In this world, nothing is certain but death, taxes and that Gulfstream and Hialeah will do annual battle for the highly desirable `middle dates' of South Florida's winter thoroughbred racing season." Gulfstream, at ___-___ (footnote omitted). We hold no illusion that this opinion will alter the accuracy of Judge Pearson's observation.
The facts leading to the present controversy are recounted in the Third District Court's opinion. Suffice it to say here that the root of the annual battle between Gulfstream and Hialeah lies in section 550.011(1), Florida Statutes (1981), which provides that "[n]o horse tracks licensed to engage in the conduct of running races located within 100 air miles of each other shall operate on the same dates." Section 550.081(1), Florida Statutes (1981), provides for the Florida Pari-mutuel Commission (Commission) to allocate winter racing dates among the three south Florida permitholders located within thirty-five miles of each other. The racing season consists of three fifty-day periods, the middle being the most favored. Section 550.081(3), Florida Statutes (1981), provides for the Division of Pari-mutuel Wagering to issue a license to a permitholder upon request filed with the Commission. The statute is silent, however, as to how the Commission is to make the allocations when there is more than one request for the middle dates. As always, Gulfstream and Hialeah have both applied for the favored middle dates of the 1983-1984 racing season.
Earlier this year, when the 1982-1983 award to Gulfstream was at issue, the Fourth District Court of Appeal in Hialeah held that section 550.081, Florida Statutes (Supp. 1980), was unconstitutional under the nondelegation of legislative power doctrine. After the decision was issued, Gulfstream petitioned the Third District Court for a writ of mandamus to compel the Commission to assign Gulfstream the middle dates for 1984. Gulfstream argued that "because the authority of the Commission to allocate in section 550.081(3), Florida Statutes (1981), has been declared unconstitutional ... the function of the Commission had been reduced to a ministerial one  award the dates requested by any qualified applicant." Gulfstream, at ___. The Third District Court denied the petition, finding that the necessary predicate for its issuance was absent in that the duty the petitioner sought to have discharged was not ministerial. In so doing the Third District Court upheld the constitutionality of the statute as not unlawfully delegating legislative authority to the Commission.
At issue is whether the legislature has delegated its legislative power without spelling out guidelines or standards for the use of that power. It is apparent that the statute contains no explicit standards. However, in the licensing area there exists an exception to the requirement that the legislature must always enunciate express guidelines and standards. Brewer v. Insurance Commissioner and Treasurer, 392 So.2d 593 (Fla. 1st DCA 1981). When the legislature reenacts a statute which has a judicial construction placed upon it, it is presumed that the legislature is aware of the construction and intends to adopt it, absent a clear expression to the contrary. *629 Deltona Corp. v. Kipnis, 194 So.2d 295 (Fla. 2d DCA 1966). Our task, then, is to determine whether there existed palpable standards which the legislature implicitly adopted in reenacting section 550.081.
Our decision in Hialeah Race Course, Inc. v. Department of Business Regulation, 270 So.2d 366 (Fla. 1972) (Hialeah 1972), set forth seven criteria for consideration in determining the allocation of racing dates.[*] Gulfstream argues, not without some logic, that the legislature did not intend to adopt the criteria of Hialeah 1972 when it enacted chapter 80-57, Laws of Florida (1980), because it could have achieved the same result by taking no action at all, which would have allowed the revival of the law controlling at the time Hialeah 1972 was decided. We find more persuasive the Commission's argument that it would be unreasonable to suppose that the legislature would knowingly and deliberately have enacted a statute with no standards. Statutes are presumed to be constitutional and should be so construed if possible. Schultz v. State, 361 So.2d 416 (Fla. 1978); Department of Legal Affairs v. Rogers, 329 So.2d 257 (Fla. 1976). This principle, coupled with the presumption that the legislature is fully aware of the judicial construction that has been placed upon a statute in the past, leads us to the conclusion that the legislature adopted the judicial construction of this Court in Hialeah 1972, as there is no clear contrary legislative expression. We assume the legislative intent was that the statute as reenacted meet constitutional muster; this result could only be accomplished by the implicit adoption of the standards spelled out in Hialeah 1972.
Gulfstream's argument in support of its petition for the writ of mandamus relied upon the unconstitutionality of section 550.081, as determined by the Fourth District Court. In accordance with our determination that the statute is constitutional and that the allocation of racing dates is a discretionary matter to be determined by an application of the criteria of Hialeah 1972, we approve the decision of the Third District Court of Appeal in denying Gulfstream's petition for writ of mandamus on the basis that the duty the petitioner sought to have discharged was discretionary rather than ministerial.
We also approve the decision to grant Gulfstream's petition for writ of quo warranto challenging the Division's authority to allocate racing dates. It is the Commission that is vested with the nondelegable discretionary power to allocate racing dates under section 550.081, as provided in section 550.011(1), Florida Statutes (1981):
The Florida Pari-mutuel Commission shall hear and approve the dates for racing in any county where one or more horse tracks ... are seeking to race and hold ratified permits upon which any track can operate in any county, apportioning the dates to the several tracks in such counties as provided by law. .. . The commission shall not delegate this function to any subordinate officer or division of the Department of Business Regulation.
Additionally, authority exists pursuant to section 20.16(4)(a), Florida Statutes (1981):
(4) There is created within the Department of Business Regulation a Florida Pari-mutuel Commission.... The Florida Pari-mutuel Commission shall have the authority to:
(a) Hear and approve the dates and changes of dates for racing and the dates within which any track . .. may be operated as prescribed by chapters 550 and 551, and it shall not delegate said function to any subordinate officer or division of said department.
The decision of the Third District Court of Appeal is approved. The decision of the Fourth District Court of Appeal holding *630 section 550.081 unconstitutional is disapproved.
It is so ordered.
ALDERMAN, C.J., and ADKINS, BOYD, OVERTON, McDONALD and SHAW, JJ., concur.
EHRLICH, J., dissents with an opinion.
EHRLICH, Justice, dissenting.
I dissent.
The majority achieves a fiscally practical result by legally questionable means. The current version of section 550.081 is materially different from the version of the statute declared unconstitutional in Hialeah Race Course, Inc. v. Gulfstream Park Racing Association, 245 So.2d 625 (Fla. 1971). That version, however, contained a statement of legislative policy and intent which Hialeah 1972 could fairly be said to construe and implement. Later amendments to section 550.081 replaced the portions held to be unconstitutional with guidelines which echoed the earlier statement of policy and purpose; thus Hialeah 1972 could still be considered controlling construction of that legislative intent.
As the majority concedes, the new statute provides no standards or guidelines. There is no language in the statute which Hialeah 1972 may be said to construe. Grafting the language of a case construing a statute which no longer exists onto a substantially dissimilar statute is judicial legislation, an activity this Court claims to eschew. Worse, the majority's action establishes that judicial interpretation of a statute has a vitality which outlasts that of the statute construed. This proposition bids fair to engender legislative and judicial chaos.
The legislature has erred, and with the best will in the world, the Court cannot correct that error. Petitioners assure us that if the statute is declared unconstitutional, their recourse will be to privately negotiate with Hialeah and to submit noncompeting requests for dates to the Commission, thus presenting the Commission with the opportunity to award the dates in a purely ministerial, non-discretionary action. This seems an imminently preferable resolution to the situation, one which establishes no dangerous precedent. The temptation to temporize and to follow the path of expediency in a case like this one is rather strong. I am gravely concerned that the precedent will come back to haunt the Court in another case.
I would approve the decision of the Fourth District Court of Appeal and declare the statute an unconstitutional delegation of legislative authority.
NOTES
[*] The interest of the State;
(b) The interest of the track owner;
(c) The good-will;
(d) The quality of the horses;
(e) The track facilities;
(f) Geography; and
(g) Skill in management.
270 So.2d at 369.