652 So.2d 852 (1995)
HUMANA OF FLORIDA., INC., d/b/a Humana Women's Hospital  Tampa, William L. Capps, M.D., and William L. Capps, M.D., P.A., Appellants,
v.
Jaimes McKAUGHAN and Darlene McKaughan, on Behalf of and natural guardians of Michael McKAUGHAN, a minor, Appellees.
FLORIDA BIRTH-RELATED NEUROLOGICAL INJURY COMPENSATION ASSOCIATION, Appellant,
v.
Jaimes McKAUGHAN and Darlene McKaughan, on Behalf of and natural guardians of Michael McKAUGHAN, a minor, Appellees.
Kenneth SOLOMON, M.D., Kenneth Solomon, M.D., P.A. and Neonatal Associates, Inc., Appellants,
v.
Jaimes McKAUGHAN and Darlene McKaughan, on Behalf of and natural guardians of Michael McKAUGHAN, a minor, Appellees.
Nos. 94-01369, 94-01693 and 94-01757.
District Court of Appeal of Florida, Second District.
March 3, 1995.
*854 Daneil M. McAuliffe, Timon V. Sullivan, and Bradley J. Goewert of Gunn, Ogden & Sullivan, P.A., and Raymond T. Elligett, Jr. and Amy S. Farrior of Schropp, Buell & Elligett, P.A., Tampa, for appellant Humana.
Ted R. Manry, III, Stephen H. Sears, and Mark E. McLaughlin of MacFarlane, Ausley, Ferguson & McMullen, Tampa, for appellants William L. Capps, M.D. and William L. Capps, M.D., P.A.
Wilbur E. Brewton, W. Douglas Moody, Jr., and Kelly Brewton Plant of Taylor, Brion, Buker & Greene, Tallahassee, for appellant Florida Birth-Related Neurological Injury Compensation Ass'n.
Philip D. Parrish of Stephens, Lynn, Miami, for appellants Kenneth Solomon, M.D., *855 Kenneth Solomon, M.D., P.A., and Neonatal Associates, Inc.
Phillip H. Taylor, West Palm Beach, Bruce S. Rogow and Beverly A. Pohl, Ft. Lauderdale, for appellees.
LAZZARA, Judge.
The Florida Birth-Related Neurological Injury Compensation Association (the Association), as well as Humana Women's Hospital, Dr. Kenneth Solomon and his professional association, Dr. William Capps and his professional association, and Neonatal Associates, Inc. (the Intervenors),[1] appeal a final order of dismissal without prejudice entered by an administrative hearing officer on a supplementary petition for benefits filed by the appellees, Jaimes and Darlene McKaughan (the McKaughans), on behalf of their minor son under the Florida Birth-Related Neurological Injury Compensation Plan (the Plan), sections 766.301-.316, Florida Statutes (1993). We reject the McKaughans' argument that we lack jurisdiction to entertain this appeal but affirm the order under review because the hearing officer correctly ruled that the allegations of the McKaughans' supplementary petition did not vest him with jurisdiction to determine whether their son suffered a "birth-related neurological injury" as defined by the Plan.
We also certify a question of great public importance regarding whether the Plan vests exclusive jurisdiction in an administrative hearing officer to determine if an injury suffered by a new-born infant is covered by the exclusive remedy of the Plan once that remedy is raised as an affirmative defense to a medical malpractice action in circuit court.
Our resolution of this case requires us to first undertake a statutory analysis of the Plan and to set forth the procedural background giving rise to this appeal and the basis for our jurisdiction. In reaching our decision, we will analyze and rely upon the analogous law of workers' compensation and the doctrine of primary jurisdiction, as well as the law of legislative intent as it relates to the Plan's provision tolling the medical malpractice statute of limitations. We will conclude with some general observations which will hopefully assuage any concerns that our decision will open a "pandora's box" of medical malpractice claims directed at "birth-related neurological injuries" which the Plan was designed to prevent.

STATUTORY ANALYSIS OF THE PLAN
The legislature enacted the Plan to stabilize a perceived medical malpractice insurance crisis affecting obstetricians and to ensure the continued availability of essential obstetrical services. § 766.301(1). The Plan establishes an administrative system that provides compensation on a no-fault basis for an infant who suffers a narrowly-defined birth-related neurological injury. § 766.301(2). The Association has been given broad powers to administer the Plan, including payment of claims on behalf of the Plan. § 766.315.
To fund the Plan, which the Florida Supreme Court has compared to a form of insurance supported by a tax, the legislature imposed mandatory yearly assessments on all licensed physicians and hospitals. § 766.314(4)(a)(b); Coy v. Florida Birth-Related Neurological Compensation Plan, 595 So.2d 943 (Fla. 1992) (upholding constitutionality of section 766.314).[2] As noted in Coy, "obstetricians are not required to join the Plan, and insurance thus is available only if the obstetrician has elected to join." 595 So.2d at 944. Obstetricians who decide to participate pay a much higher assessment. § 766.314(4)(c). In return, they are given the benefit of the Plan's exclusive administrative remedy and thus are immune from malpractice claims for birth-related neurological injuries except in situations involving "clear and convincing evidence of bad faith or malicious purpose or willful and wanton disregard of human rights, safety, or property." § 766.303(2).
*856 Claims filed under the Plan are heard and determined by an administrative hearing officer who must schedule an expedited hearing at which the claimant and the Association are mandatory parties. §§ 766.304; 766.307. The hearing officer is charged with determining whether the injury claimed is a birth-related neurological injury and whether obstetrical services were delivered by a participating physician. § 766.309.
Under the Plan, a "birth-related neurological injury" means:
[I]njury to the brain or spinal cord of a live infant weighing at least 2,500 grams at birth caused by oxygen deprivation or mechanical injury occurring in the course of labor, delivery, or resuscitation in the immediate postdelivery period in a hospital, which renders the infant permanently and substantially mentally and physically impaired.
§ 766.302(2). If the hearing officer finds that the statutory criteria are satisfied, then the infant, as well as the infant's parents or legal guardians, are entitled to the award of specifically defined, but limited, financial benefits without regard to fault. § 766.31.

PROCEDURAL BACKGROUND
The McKaughans sued the Intervenors for medical malpractice in circuit court claiming that their son suffered permanent neurological damage in the form of a spinal cord injury after the immediate postdelivery period. The Intervenors responded by raising the exclusive administrative remedy of the Plan as a defense. They were ultimately successful in convincing the circuit court judge to abate the malpractice action pending a determination in a proceeding brought under the Plan as to whether the injury constituted a "birth-related neurological injury."
Acting under the direction of the circuit court's order, the McKaughans then filed a petition for benefits under the Plan, which they later supplemented. The gravamen of their supplementary petition was that the injury to their son did not qualify as a birth-related neurological injury as defined in the Plan. The McKaughans therefore requested that the case be returned to the circuit court for resolution.
The hearing officer, faced with this allegation, directed the parties to show cause why the supplementary petition should not be dismissed for lack of jurisdiction. Following receipt of the parties' responses, the hearing officer entered a final order dismissing the McKaughans' petition without prejudice. He reasoned that "it would be rather anomalous to accede, as suggested by the circuit court, and accept the petition, as filed, where the petitioners have the burden of demonstrating entitlement to benefits under the Plan, but propose to prove a negative: that they are not entitled to such benefits. Section 766.309(1)(a)." The Association and the Intervenors appealed from this order.

JURISDICTIONAL ANALYSIS
The McKaughans contend that the hearing officer's order is a nonfinal, nonappealable order and that, in any event, the Association is not a party adversely affected by final agency action within the meaning of section 120.68(1), Florida Statutes (1993). We reject both contentions based on the following analysis.
We have held that "[w]hether a judgment is final or merely interlocutory is not determined by its title." Saul II v. Basse, 399 So.2d 130, 132 (Fla. 2d DCA 1981) (citing Nowlin v. Pickren, 131 So.2d 894 (Fla. 2d DCA 1961)). Instead, as we noted in Nowlin:
[W]e must determine if the legal effect of this order was to dispose of the whole matter in controversy, pronounce the ultimate conclusion of the case and terminate the judicial labor of the lower court. The status of the pleadings, the particular matters before the court, and the contents of the order in question have a direct bearing upon the legal effect of such order. We are concerned not only with the technical form of the order, but also the intent as expressed therein. Form and content are of equal import in revealing the finality thereof.
131 So.2d at 895.
Measured against this standard, the fact that the hearing officer rendered a "Final *857 Order of Dismissal Without Prejudice" is not determinative. It is patently obvious that the order was designed to terminate judicial labor as to the McKaughans' supplementary petition for benefits pending for hearing without prejudice to their filing another petition at some later time. It is evident from the use of the term "Final Order" that the hearing officer intended not to allow any further amendment to this particular petition. See Carlton v. Wal-Mart Stores, Inc., 621 So.2d 451 (Fla. 1st DCA 1993); Gifford v. Bruckner, 565 So.2d 887, 888 n. 1 (Fla. 2d DCA 1990). Thus, we conclude that the hearing officer's order, although styled "without prejudice," is sufficiently final to permit an appeal because it disposed of the pending petition and left no issues remaining for further judicial determination in the proceeding. See Eagle v. Eagle, 632 So.2d 122 (Fla. 1st DCA 1994).
We also conclude that the Association has sufficiently demonstrated that it has been adversely affected by the hearing officer's order. See, e.g., Rabren v. Department of Professional Regulation, 568 So.2d 1283 (Fla. 1st DCA 1990). In charging the Association with the responsibility of administering the Plan, the legislature granted it the broad authority to "[h]ave and exercise all powers necessary or convenient to effect any or all of the purposes for which the plan is created." § 766.315(4)(g). In this case, the Association is acting in clear accord with the legislature's mandate by appealing an order which, if wrong, could have the substantially adverse effect of encouraging legal representatives of infants who have actually suffered birth-related neurological injuries to circumvent the exclusive administrative remedial process of the Plan by simply alleging the injury is not covered by the Plan. Such circuitous action would clearly be contrary to the manifest intent and purpose of the Plan.
Accordingly, because the order in this case can reasonably be construed as preventing the Association from carrying out its statutory duty under the Plan, we conclude that the Association has demonstrated a sufficient immediacy of injury in fact, as opposed to illusory speculation, and thus has standing to appeal. See Florida Dep't of Offender Rehabilitation v. Jerry, 353 So.2d 1230 (Fla. 1st DCA), cert. denied, 359 So.2d 1215 (Fla. 1978).

ANALYSIS

I. LAW OF WORKERS' COMPENSATION

We now turn to the issue of whether the hearing officer erred in dismissing the McKaughans' supplementary petition under the Plan. To assist us in resolving this issue, we look to case law concerning the analogous system of workers' compensation because, as will be shown, that system and the Plan share similar purposes and characteristics. See Florida Birth-Related Neurological Compensation Ass'n v. Carreras, 633 So.2d 1103, 1107 (Fla. 3d DCA 1994) (the Plan's no-fault system "is one comparable to the workers' compensation system").
One of the fundamental purposes of workers' compensation is to relieve society of the burden of caring for an injured person by placing the burden on the industry involved. Sullivan v. Mayo, 121 So.2d 424 (Fla. 1960). The Plan's assessment process embodies this cost-shifting philosophy by primarily requiring the health-care industry to shoulder the burden of providing the funds used to pay benefits on behalf of a new-born infant incapacitated by a birth-related neurological injury while under the care of a medical specialist.
Another fundamental purpose of workers' compensation is to provide a system in which liability is limited and determinative and the remedy is expeditious and independent of proof of fault, consistent with the right to undertake a reasonable investigation regarding liability. Thompson v. W.T. Edwards Tuberculosis Hosp., 164 So.2d 13 (Fla. 1964); McLean v. Mundy, 81 So.2d 501 (Fla. 1955). The Plan promotes this same philosophy by (1) establishing a no-fault remedial process administered in an expedited manner sufficient to give the Association an opportunity to determine its liability and by (2) providing specifically defined and limited benefits for a compensable injury.
Another goal of the workers' compensation system is that it "should be self-executing, *858 and that benefits should be paid without the necessity of any legal or administrative proceedings." Florida Erection Servs., Inc. v. McDonald, 395 So.2d 203, 209 (Fla. 1st DCA 1981). The Plan embodies this concept to a limited extent. While it requires that claims for compensation must be filed, it also contemplates payment of claims without resort to a formal administrative hearing process. Section 766.305(6) provides that "[a]ny claim which the association determines to be compensable may be accepted for compensation, provided that the acceptance is approved by the hearing officer to whom the claim for compensation is assigned."
Finally, the Workers' Compensation Act is a limited statutory substitute for common law rights and liabilities. American Freight Sys., Inc. v. Florida Farm Bureau Casualty Ins. Co., 453 So.2d 468 (Fla. 2d DCA 1984); Grice v. Suwannee Lumber Mfg. Co., 113 So.2d 742 (Fla. 1st DCA 1959). The Plan shares this characteristic. Section 766.303(2) provides in pertinent part that "[t]he rights and remedies granted by this plan ... shall exclude all other rights and remedies ... at common law or otherwise."
Significantly, the legislature acknowledged the close similarity between these two administrative remedial systems because the Plan, as originally enacted, vested authority in a judge of compensation claims to hear and determine a claim and to "exercise the full power and authority granted to him with respect to workers' compensation claims, as necessary, to carry out the purposes of [the Plan]." Ch. 88-1, § 63, at 175, Laws of Fla. (codified at § 766.304, Fla. Stat. (Supp. 1988)).[3] Moreover, even though an administrative hearing officer now performs this function, that officer, as well as a party to the proceeding, can invoke the jurisdiction of a circuit court for assistance in the determination and enforcement of an award, as can similarly be done under the Workers' Compensation Act. Compare § 766.312 with §§ 440.24(1); 440.33(2), Fla. Stat. (1993).
Accordingly, because both the Plan and the workers' compensation system possess common purposes and characteristics and are aimed at accomplishing similar results, albeit in different contexts, we may regard and construe them in pari materia. See Singleton v. Larson, 46 So.2d 186, 190 (Fla. 1950). See also Goldstein v. Acme Concrete Corp., 103 So.2d 202, 204 (Fla. 1958) (holding that because mechanics' lien law and workers' compensation law were in a broad sense in pari materia, they should, "to the extent that an understanding of one may aid in the interpretation of the other, be read and considered together"). Thus, as previously indicated, we look to workers' compensation law to assist us in resolving the jurisdictional issue posed in this case.
The Workers' Compensation Act provides that an employer's liability for compensation to an employee pursuant to the act "shall be exclusive and in place of all other liability of such employer." § 440.11(1), Fla. Stat. (Supp. 1994). In the context of a civil tort action filed by an employee against an employer, however, it has long been the law of Florida that the exclusive remedy afforded by section 440.11 is an affirmative defense. E.g., Walker v. L.T.D. Indus., Inc., 437 So.2d 230 (Fla. 2d DCA 1983). The Florida Supreme Court recently reaffirmed this concept in Mandico v. Taos Construction, Inc., 605 So.2d 850 (Fla. 1992).
In Mandico, the court receded from Winn-Lovett Tampa v. Murphree, 73 So.2d 287 (Fla. 1954), in which it had held that prohibition was the appropriate remedy to test the jurisdiction of a circuit court in the context of the exclusive remedy established by section 440.11. Although the court recognized that one of the reasons Murphree may have permitted prohibition was to avoid the necessity of a trial when it was evident the plaintiff's exclusive remedy was to obtain workers' compensation benefits, it concluded "that Murphree was an unwarranted extension of the principle of prohibition." 605 So.2d at 854. The court justified its conclusion by noting:

*859 A person has a right to file a personal injury action in circuit court, and the court has jurisdiction to entertain the suit. The assertion that the plaintiff's exclusive remedy is under the workers' compensation law is an affirmative defense, and its validity can only be determined in the course of litigation. The court has jurisdiction to decide the question even if it is wrong.
Id. (emphasis added).
We conclude that this rationale should apply when a plaintiff files a medical malpractice action in circuit court specifically alleging a cause of action for an injury not covered by the Plan and a defendant physician or hospital raises the exclusivity of the Plan as a bar to the circuit court's jurisdiction. We can perceive of nothing in the Plan that mandates that when such a defense is raised, the civil action must automatically be abated and referred to an administrative hearing officer for a threshold determination of whether the injury alleged is covered by the Plan.
Moreover, because the Plan, like the Workers' Compensation Act, is a statutory substitute for common law rights and liabilities, it should be strictly construed to include only those subjects clearly embraced within its terms. See American Freight Sys. Inc., 453 So.2d 468. Thus, just as under the Workers' Compensation Act, a legal representative of an infant should be free to pursue common law remedies for damages resulting in an injury not encompassed within the express provisions of the Plan. See Grice, 113 So.2d 742.
Accordingly, we agree with the hearing officer's analysis and conclusion that:
The legislature did not intend, and the Plan does not provide, that any claim for an injury suffered by an infant during the birthing process is subject to or reviewable under the Plan, and the Plan evidences no requirement that such injuries suffer a pre-suit screening before DOAH [Division of Administrative Hearings], as to whether the injury is or is not a `birth-related neurological injury,' before a medical malpractice claim may be pursued. Rather, the Plan contemplates the filing of such claims at the election of the legal representative, and presumably, as a consequence of the provisions of [section] 766.303(2), they will do so when a good faith evaluation of the case reveals that the injury is compensable under the Plan or they harbor some reasonable uncertainty. Where, as here, the legal representatives suffer no such uncertainty, and are satisfied that the injury is not compensable under the Plan, there is no rational basis under the existing statutory scheme to compel them to first seek an order from DOAH confirming their opinion before they may proceed with their medical malpractice claim.
We next address the argument that once the McKaughans initiated the administrative process by filing a claim, the hearing officer had no choice but to determine whether their son sustained a "birth-related neurological injury," notwithstanding the allegations of their supplementary petition. To resolve this issue, we focus on the following undisputed finding of the hearing officer:
From the petition, as amended, and the responses to the order to show cause, as supported by the undisputed facts of record, it is apparent that the defendants to the companion civil action ([I]ntervenors here) raised the exclusivity of the Plan as a defense to that action, and the court, upon directing petitioners to file a claim for benefits under the Plan, abated that proceeding until a decision was rendered by the Division of Administrative Hearings (DOAH) as to whether the infant's injury was or was not a `birth-related neurological injury,' Under such circumstance, petitioners felt compelled to file a petition with DOAH although they were of the firm opinion that the injury was not a covered injury, and had no desire, absent such order, to file such a petition.

(Emphasis added.)
Against this factual backdrop, we conclude that the hearing officer was eminently correct in dismissing the McKaughans' supplementary petition. As previously noted, the Plan is similar to the workers' compensation system in that it is purely a creature of statute. Thus, just as in the workers' compensation *860 system, all rights and liabilities established by the Plan, as well as the administrative hearing officer's jurisdictional power, flow exclusively from the statutes creating the Plan. See Travelers Ins. Co. v. Sitko, 496 So.2d 920 (Fla. 1st DCA 1986).
In that regard, the Plan clearly contemplates that a hearing officer's jurisdiction under section 766.304 is limited to determining and hearing all claims filed pursuant to the Plan. Section 766.302(3) defines a claimant to mean "any person who files a claim pursuant to s. 766.305 for compensation for a birth-related neurological injury to an infant." The McKaughans, through their supplementary petition, obviously did not meet the statutory definition of a claimant because they were not seeking compensation for a birth-related neurological injury; they only filed their original petition seeking benefits under the compulsion of the circuit court's order. Thus, the hearing officer properly concluded that "[u]nder such circumstances, petitioners have failed to file a claim for compensation for a `birth-related neurological injury.'"

II. DOCTRINE OF PRIMARY JURISDICTION

A different conclusion is not compelled by the doctrine of primary jurisdiction. We explained in State ex rel. Shevin v. Tampa Electric Co., 291 So.2d 45, 47 (Fla. 2d DCA), cert. denied, 297 So.2d 571 (Fla. 1974), that:
[I]f in a given case the operative conclusion to be reached by the court is one of ultimate fact, or of law which in turn is dependent upon the existence of highly technical or specialized criteria peculiarly within the expertise of an administrative agency, such doctrine is invoked in the interest of uniformity more as a matter of advised judicial deference to a more competent tribunal rather than as a matter of judicial discretion which may or may not be exercised in favor of such deference.
* * * * * *
[I]f the ultimate question in the case is solely a matter of law or one of law which is not `intertwined' with technical facts the `primary jurisdiction' doctrine is not applicable at all.
We also said in Hill Top Developers v. Holiday Pines Service Corp., 478 So.2d 368, 370 (Fla. 2d DCA 1985), review denied, 488 So.2d 68 (Fla. 1986), that "the [primary jurisdiction] doctrine operates, when applicable, to postpone judicial consideration of a case to administrative determination of important questions involved by an agency with special competence in the area." (Emphasis added.)
Unquestionably, circuit courts have vast experience and competence in adjudicating medical negligence claims and have traditionally and routinely decided complicated medical issues in such cases without the assistance of administrative expertise. Moreover, in this case, the issue to be decided by the circuit court was relatively straightforward: whether the injury suffered by the McKaughans' son fell under the Plan's definition of birth-related neurological injury. Thus, on the facts presented, we conclude that the doctrine of primary jurisdiction did not compel the hearing officer to determine the McKaughans' claim. See Northeast Airlines, Inc. v. Weiss, 113 So.2d 884 (Fla. 3d DCA), cert. denied, 116 So.2d 772 (Fla. 1959).
Furthermore, it is apparent from the supplementary petition that the McKaughans would have no adequate administrative remedy under the Plan if their son did not in fact suffer a "birth-related neurological injury." Within that context, therefore, the circuit court clearly had jurisdiction to decide whether the injury fell within the definition of the Plan without deferring to a proceeding under the Plan. If it determined the Plan applied, it should have dismissed the case for failure to pursue an appropriate administrative remedy; if it determined the Plan did not apply, it should have proceeded with the trial of the case. See Department of Gen. Servs. v. Biltmore Constr. Co., 413 So.2d 803 (Fla. 1st DCA 1982). The hearing officer implicitly recognized this fact by emphasizing the "rather anomalous" situation created by the circuit court's order of abatement.
University of Miami v. Klein, 603 So.2d 651 (Fla. 3d DCA), review denied, 613 So.2d 6 (Fla. 1992), does not conflict with our jurisdictional analysis. In Klein, the court confronted *861 the specific issue of whether the Plan applied to the death of an infant born alive when the death was caused by a neurological injury. After analyzing the statutory definition of "birth-related neurological injury," the court held that such an injury resulting in postdelivery death fell within the exclusive remedial process established by the Plan. Thus, unlike this case, the court's decision was clearly based on a jurisdictional analysis undertaken in the face of undisputed facts. Significantly, however, the court also observed that under Mandico, 605 So.2d 850, the circuit court had jurisdiction within the context of the case to determine its jurisdiction.

III. LEGISLATIVE INTENT OF PLAN'S PROVISION TOLLING MEDICAL MALPRACTICE STATUTE OF LIMITATIONS

Finally, we consider but reject the argument that because the statute of limitations for filing a civil (malpractice) action is tolled while a claim is pending or on appeal, the legislature clearly intended that the issue of whether a claim falls within the Plan must be resolved by an administrative hearing officer before an infant's legal representative may pursue or continue to pursue a civil action for medical malpractice. Our basis for rejecting this argument is the well-settled rule that "[w]e are not permitted to attribute to the legislature an intent beyond that expressed ... or to speculate about what should have been intended." Public Health Trust of Dade County v. Lopez, 531 So.2d 946, 949 (Fla. 1988) (citations omitted).
Under the Plan, a claim for compensation must be filed within five years of birth. § 766.313. Once a claim is filed, however, the statute of limitations with respect to a civil action that may be brought "allegedly arising out of, or related to, a birth-related neurological injury" is tolled while the claim is pending or on appeal. § 766.306. The intent of the Plan's tolling statute, at first glance, appears to be clear and unambiguous: to ensure a claimant has sufficient time to invoke the remedy of a traditional medical malpractice civil action should a hearing officer or appellate court decide that a claim does not qualify for compensability under the Plan. Upon closer scrutiny, however, the statutory language does not support such an unequivocal purpose and, in fact, leads to anomalous consequences.
We find it significant that the statute expressly provides that the triggering event for tolling purposes is "the filing of a claim." Thus, an infant's legal representative who files a claim more than two years after birth may automatically be precluded from pursuing a civil malpractice action under the two-year statute of limitations of section 95.11(4)(b), Florida Statutes (1993), should a hearing officer or appellate court determine the claim is not covered by the Plan.[4]
It is reasonable to assume that a physician or hospital faced with a later suit for medical malpractice, under the circumstance described, would raise the defense of the statute of limitations. If that defense is successful, then the infant, having been denied the benefits of the Plan, would also be denied the only other legal remedy available for redress of the injury suffered. Although we cannot perceive that the legislature intended such an unjust result, we must construe the statute in accordance with its plain meaning because we have no authority, without abrogating legislative power, to extend, modify, or limit the statute's express terms or its reasonable and obvious implications. Holly v. Auld, 450 So.2d 217, 219 (Fla. 1984).
Accordingly, given the ambiguity of the tolling statute, as well as the anomaly it creates under certain circumstances, we would be engaging in sheer, unsupported speculation to read into this statute an unmanifested intent that a person must file a claim under the Plan before proceeding with a medical malpractice action. See Carlile v. Game & Fresh Water Fish Comm'n, 354 So.2d 362 (Fla. 1977) (in construing a statute, *862 inference and implication cannot be substituted for clear expression).
Moreover, should a plaintiff elect to pursue a medical malpractice action contending that an infant's injury is not a "birth-related neurological injury" and the Plan's exclusive remedy is raised as an affirmative defense, then the plaintiff runs the risk of being barred from recovery under the Plan should that defense prevail and the five-year statute of limitations for filing a claim has expired.[5] The hearing officer recognized this potential pitfall when he made the following conclusion with which we agree:
Under the Plan, the Legislature has reposed jurisdiction in DOAH to award benefits for a `birth-related neurological injury,' and such benefits are not recoverable outside that forum. See, e.g., Hill Top Developers v. Holiday Pines Serv. Corp., 478 So.2d 368 (Fla. 2d DCA 1985). Accordingly, should a party elect to proceed with a medical malpractice claim, as opposed to seeking the benefits under the Plan, that party faces the risk that a defense will be raised in the medical malpractice action regarding the exclusivity of the remedies afforded by the Plan and, if sustained, be barred from recovery. That election is, however, the exclusive province of the infant's legal representative, and there is no provision in the Plan that requires, as a condition precedent to a medical malpractice claim, that a party first receive a determination from DOAH that the claim is not a `birth-related neurological injury.'
To conclude otherwise would, in our view, be contrary to the express provisions of article I, section 21, of the Florida Constitution which guarantees that "[t]he courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay." As noted by our supreme court, "[t]he history of the provision shows the courts' intention to construe the right liberally in order to guarantee broad accessibility to the courts for resolving disputes." Psychiatric Assocs. v. Siegel, 610 So.2d 419, 424 (Fla. 1992). Hence, "[j]udicial construction, in cases where ambiguities exist, should be in favor of, and not in restriction of, access to the courts." Swain v. Curry, 595 So.2d 168, 174 (Fla. 1st DCA), review denied, 601 So.2d 551 (Fla. 1992). Accordingly, because the tolling provision of the Plan is ambiguous, we cannot construe it as evidencing a clear intent that an infant's legal representative is automatically foreclosed from access to a court when the Plan's exclusive remedy is merely asserted as a defense.[6]

CONCLUDING OBSERVATIONS
We are not convinced that our conclusion will result in wholesale medical malpractice claims intended to subvert the exclusive administrative remedy provided for in the Plan for "birth-related neurological injuries." The legislature has taken great care to establish mandatory presuit investigative requirements for the filing of a medical malpractice claim in circuit court. §§ 766.106, Fla. Stat. (Supp. 1994); 766.201-.205, Fla. Stat. (1993). The purpose of these requirements is "to alleviate the high cost of [medical negligence] claims by early determination of the claims' merits and to provide for their prompt resolution." Ragoonanan v. Associates in Obstetrics & Gynecology, 619 So.2d 482, 484 (Fla. 2d DCA 1993). We are confident that this legislative scheme will be more than adequate to readily and promptly identify claims that should properly be filed under the Plan rather than in circuit court.
We also note that the legislature has promulgated statutory safeguards in the form of monetary sanctions and referral for disciplinary action with regard to individuals who are involved in initiating a medical malpractice claim which has no reasonable basis. *863 § 766.206, Fla. Stat. (1993). Again, we are confident that such potential sanctions will act to deter individuals from pursuing, or assisting in the pursuit of, such a claim in a factual setting where the Plan clearly provides the exclusive administrative remedy.
We are also confident that allowing a circuit court to determine the exclusivity of the Plan as an affirmative defense will not result in a frustration of the legislature's purpose in enacting the Plan. Adverting again to the workers' compensation system, we are not aware of any documented evidence indicating that the legislative goal of this system has been frustrated by the long established law that workers' compensation immunity is an affirmative defense to a traditional tort action. See Pomponio v. Claridge of Pompano Condominium, Inc., 378 So.2d 774, 781 (Fla. 1979). Indeed, by continually reenacting the immunity provisions of section 440.11 without abrogating this legal principle, the legislature is presumed to have adopted it as part of the statute. See, e.g., Gulfstream Park Racing Ass'n, Inc. v. Department of Business Regulation, 441 So.2d 627 (Fla. 1983). Thus, it is reasonable to conclude that the legislature does not perceive this judicial construction of the statute as an impediment to the efficient operation of the no-fault system it established under the Workers' Compensation Act. Likewise, we do not perceive our conclusion that the Plan's immunity is an affirmative defense to a traditional medical malpractice action to be an impediment to the efficient operation of the Plan.
Finally, to the extent that our conclusion may result in a delay of an early resolution of whether the Plan's exclusive remedy precludes a medical malpractice action, we would point out that the supreme court has the authority, if it so chooses, to amend Florida Rule of Appellate Procedure 9.130(a)(3) to provide for immediate review of a nonfinal order determining that a party is not entitled to the Plan's immunity. See Mandico, 605 So.2d 850.

CERTIFIED QUESTION
We acknowledge, as the McKaughans candidly asserted at oral argument, that the issue posed in this case is not subject to easy resolution and that there is merit in the arguments of all parties. Thus, recognizing the state-wide importance of our decision and the significant impact it will have on the future administration of the Plan, we certify the following question to the Florida Supreme Court as one of great public importance:
DOES AN ADMINISTRATIVE HEARING OFFICER HAVE THE EXCLUSIVE JURISDICTION TO DETERMINE WHETHER AN INJURY SUFFERED BY A NEW-BORN INFANT DOES OR DOES NOT CONSTITUTE A "BIRTH-RELATED NEUROLOGICAL INJURY" WITHIN THE MEANING OF THE FLORIDA BIRTH-RELATED NEUROLOGICAL INJURY COMPENSATION PLAN, SECTIONS 766.301-.316, FLORIDA STATUTES (1993), SO THAT A CIRCUIT COURT IN A MEDICAL MALPRACTICE ACTION SPECIFICALLY ALLEGING AN INJURY OUTSIDE THE COVERAGE OF THE PLAN MUST AUTOMATICALLY ABATE THAT ACTION WHEN THE PLAN'S IMMUNITY IS RAISED AS AN AFFIRMATIVE DEFENSE PENDING A DETERMINATION BY THE HEARING OFFICER AS TO THE EXACT NATURE OF THE INFANT'S INJURY?
Accordingly, for the reasons expressed, we conclude that we have jurisdiction over this appeal and affirm the administrative hearing officer's final order dismissing the McKaughans' supplementary petition without prejudice.
Affirmed; question certified.
CAMPBELL, A.C.J., and BLUE, J., concur.
NOTES
[1] The hospital, the doctors and their professional associations, as well as Neonatal Associates, Inc., were intervenors below.
[2] To maintain the Plan on an "acturarially sound basis," funds are also derived in part from the Insurance Commissioner's Regulatory Trust Fund and, in certain circumstances, casualty insurance companies. § 766.314(5)(b)(c).
[3] In 1993, the Plan was amended to repose this authority in an administrative hearing officer. Ch. 93-251, §§ 2, 3, at 2477, Laws of Fla. (codified as amended at §§ 766.302(4), 766.304, Fla. Stat. (1993)).
[4] We note that the catastrophic nature of the infant's injury, which would be the focus of a later-filed civil action, may be sufficient "standing alone" to commence the running of the medical malpractice statute of limitations at birth. See Tanner v. Hartog, 618 So.2d 177, 181-182 (Fla. 1993).
[5] We note that the doctrine of election of remedies may possibly be implicated even if the statute of limitations has not expired. See generally Barbe v. Villeneuve, 505 So.2d 1331, 1333 (Fla. 1987). Under the circumstances presented in this case, however, we need not decide whether this doctrine would in fact preclude an unsuccessful medical malpractice plaintiff from pursuing a claim for benefits under the Plan.
[6] This construction of the Plan's tolling provision should not be read as holding that the Plan's exclusive administrative remedial process for a "birth-related neurological injury" does not meet the test of Kluger v. White, 281 So.2d 1 (Fla. 1973). That issue is not before us.