668 So.2d 974 (1996)
FLORIDA BIRTH-RELATED NEUROLOGICAL INJURY COMPENSATION ASSOCIATION, Petitioner,
v.
Jaimes McKAUGHAN and Darlene McKaughan, as Parents and Natural Guardians of Michael McKaughan, a Minor Child, and Jaimes McKaughan and Darlene McKaughan, Individually, Respondents.
HUMANA OF FLORIDA, INC., d/b/a/ Humana Women's HospitalTampa and William L. Capps, M.D., et al., Petitioners,
v.
Jaimes McKAUGHAN and Darlene McKaughan, as Parents and Natural Guardians of Michael McKaughan, a Minor Child, and Jaimes McKaughan and Darlene McKaughan, Individually, Respondents.
Kenneth SOLOMON, M.D., et al., Petitioners,
v.
Jaimes McKAUGHAN and Darlene McKaughan, as Parents and Natural Guardians of Michael McKaughan, a Minor Child, and Jaimes McKaughan and Darlene McKaughan, Individually, Respondents.
Nos. 85447, 85455 and 85469.
Supreme Court of Florida.
February 29, 1996.
*975 Bruce M. Culpepper and William E. Whitney of Pennington & Haben, P.A., Tallahassee, for Florida Birth-Related Neurological Injury Compensation Association, Tallahassee.
Phillip D. Parrish of Stephens, Lynn, Klein & McNicholas, P.A., Miami, for Kenneth Solomon, M.D., et al.
Raymond T. Elligett, Jr. and Amy S. Farrior of Schropp, Buell & Elligett, P.A., Tampa, Randy J. Ogden, Timon V. Sullivan and Daneil M. McAulliffe of Gunn, Ogden & Sullivan, Tampa, and Ted R. Manry, III and Mark E. McLaughlin of Macfarlane, Ausley, Ferguson & McMullen, Tampa, for Humana for Florida, Inc., etc. and William L. Capps, M.D., etc.
Bruce S. Rogow and Beverly A. Pohl of Bruce S. Rogow, P.A., Fort Lauderdale, and Phillip H. Taylor of Taylor & Robinson, Palm Beach Gardens, for Respondents.
ANSTEAD, Justice.
We have for review the decision of the Second District passing upon the following question certified to be of great public importance:
DOES AN ADMINISTRATIVE HEARING OFFICER HAVE THE EXCLUSIVE JURISDICTION TO DETERMINE WHETHER AN INJURY SUFFERED BY A NEW-BORN INFANT DOES OR DOES NOT CONSTITUTE A "BIRTH-RELATED NEUROLOGICAL INJURY" WITHIN THE MEANING OF THE FLORIDA BIRTH-RELATED NEUROLOGICAL INJURY COMPENSATION PLAN, SECTIONS 766.301-.316, FLORIDA STATUTES (1993), SO THAT A CIRCUIT COURT IN A MEDICAL MALPRACTICE ACTION SPECIFICALLY ALLEGING AN INJURY OUTSIDE THE COVERAGE OF THE PLAN MUST AUTOMATICALLY ABATE THAT ACTION WHEN THE PLAN'S IMMUNITY IS RAISED AS AN AFFIRMATIVE DEFENSE PENDING A DETERMINATION BY THE HEARING OFFICER AS TO THE EXACT NATURE OF THE INFANT'S INJURY?
Humana of Florida, Inc. v. McKaughan, 652 So.2d 852, 863 (Fla. 2d DCA 1995). We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We agree with the district court that the Birth-Related Neurological Injury Compensation Plan (hereinafter the NICA plan or the plan), sections 766.301-.316, Florida Statutes (1993), does not vest exclusive jurisdiction in an administrative hearing officer to determine if an injury suffered by a new-born infant is covered by the plan when the plan's provisions are raised as an affirmative defense to a medical malpractice action in circuit court. McKaughan, 652 So.2d at 855. We approve of the district court's analysis and resolution of this case.

PROCEDURAL BACKGROUND
Michael McKaughan, the infant son of Jaimes and Darlene McKaughan, was the product of a breech delivery performed at Humana Women's Hospital in Tampa on May 19, 1989, by William L. Capps, M.D. Following delivery, Michael was transported to the Neonatal Unit where he received care and *976 treatment from Humana employees and neonatologist Kenneth Solomon, M.D.
In January 1992, the McKaughans filed a medical malpractice action against the medical providers for injuries allegedly sustained by Michael due to the providers' negligence. The trial court subsequently permitted the Florida Birth-Related Neurological Injury Compensation Association (NICA) to intervene in the action. Petitioners responded to the suit in part by asserting as an affirmative defense that the action was barred by virtue of the statutory provisions providing an exclusive administrative remedy for infants who sustain birth-related neurological injuries. Petitioners' motion for summary judgment on this ground was denied. However, the circuit court referred the case to the Division of Administrative Hearings, and ordered the case stayed pending a determination by the Division as to whether the infant suffered from an injury compensable under the NICA plan. Pursuant to the order of the court, the McKaughans filed a petition for benefits pursuant to the NICA plan. Subsequently, the McKaughans filed a supplementary petition which alleged their son's impairment did not occur "in the course of labor, delivery, or resuscitation in the immediate post-delivery period," see sec. 766.302(2), and therefore did not meet the definition of a birth-related neurological injury as provided in the plan. The McKaughans attached the affidavit of David A. Abramson, M.D., to factually support their allegations that this was not a NICA claim. The McKaughans requested that the case be sent back to the circuit court for resolution.
Petitioners opposed the request for referral back to circuit court, maintaining the claim was compensable under the NICA plan and that it was up to an administrative hearing officer to resolve that issue. NICA also intervened in the administrative proceedings and filed a response in opposition to the McKaughans' supplementary petition, alleging that "Michael has suffered a `birth-related neurological injury' as defined in section 766.302(2), Florida Statutes." In a final order, the administrative hearing officer dismissed the McKaughan's petition without prejudice and concluded:
the Plan does not accord a participating physician or other health care provider any right or opportunity to initiate such a [NICA] claim or to compel the resolution of any dispute regarding the compensability of any injury to an infant, before DOAH.
The hearing officer held that the McKaughans had not filed a "claim for compensation" suitable for administrative resolution since they had affirmatively averred that Michael did not meet the statutory definition of an infant suffering a birth-related neurological injury. See § 766.302(2). Upon appeal, the district court, in a thorough and comprehensive opinion by Judge Lazzara, affirmed the administrative hearing officer's final order but certified for review the above question as one of great public importance.
In large part, the district court's analysis was predicated upon the similarities between the NICA plan and the administrative scheme for workers' compensation claims. We agree with that analysis and its application to this case by the district court. See Mandico v. Taos Construction, Inc., 605 So.2d 850 (Fla.1992). The district court concluded:
In Mandico, the court receded from Winn-Lovett Tampa v. Murphree, 73 So.2d 287 (Fla.1954), in which it had held that prohibition was the appropriate remedy to test the jurisdiction of a circuit court in the context of the exclusive remedy established by section 440.11. Although the court recognized that one of the reasons Murphree may have permitted prohibition was to avoid the necessity of a trial when it was evident the plaintiff's exclusive remedy was to obtain workers' compensation benefits, it concluded "that Murphree was an unwarranted extension of the principle of prohibition." 605 So.2d at 854. The court justified its conclusion by noting:
A person has a right to file a personal injury action in circuit court, and the court has jurisdiction to entertain the suit. The assertion that the plaintiff's exclusive remedy is under the workers' compensation law is an affirmative defense, and its validity can only be determined in the course of litigation. The *977 court has jurisdiction to decide the question even if it is wrong.
Id. (emphasis added).
We conclude that this rationale should apply when a plaintiff files a medical malpractice action in circuit court specifically alleging a cause of action for an injury not covered by the Plan and a defendant physician or hospital raises the exclusivity of the Plan as a bar to the circuit court's jurisdiction. We can perceive of nothing in the Plan that mandates that when such a defense is raised, the civil action must automatically be abated and referred to an administrative hearing officer for a threshold determination of whether the injury alleged is covered by the Plan.
Moreover, because the Plan, like the Workers' Compensation Act, is a statutory substitute for common law rights and liabilities, it should be strictly construed to include only those subjects clearly embraced within its terms. See American Freight Sys. Inc. [v. Florida Farm Bureau Casualty Insurance Co.] 453 So.2d 468 [(Fla.App. 2d Dist.1984)]. Thus, just as under the Workers' Compensation At, a legal representative of an infant should be free to pursue common law remedies for damages resulting in an injury not encompassed within the express provisions of the Plan. See Grice [v. Suwannee Lumber Mfg. Co.] 113 So.2d 742 [(Fla.App. 1 Dist. 1959)].
McKaughan, 652 So.2d at 858-59.

THE NICA PLAN
As noted by the district court, the legislature enacted the NICA plan to stabilize a perceived medical malpractice insurance crisis affecting obstetricians and to ensure the continued availability in Florida of essential obstetrical services. § 766.301(1), Fla.Stat. (1993). The plan establishes a no-fault administrative system that provides compensation for an infant who suffers a narrowly defined birth-related neurological injury. Id. § 766.301(2). Under the NICA plan, a "birth-related neurological injury" is defined as:
[I]njury to the brain or spinal cord of a live infant weighing at least 2,500 grams at birth caused by oxygen deprivation or mechanical injury occurring in the course of labor, delivery, or resuscitation in the immediate postdelivery period in a hospital, which renders the infant permanently and substantially mentally and physically impaired.
Id. § 766.302(2). Claims filed under the NICA plan are heard by an administrative hearing officer, id. § 766.304, who must determine whether the injury claimed is a birth-related neurological injury. Id. § 766.309(1)(a). If the hearing officer finds that the statutory criteria are satisfied, then the infant, as well as the infant's parents or legal guardians, are entitled to the award of specifically defined, but limited, financial benefits without regard to fault. Id. § 766.31.

CLAIMANTS FOR NICA BENEFITS
Section 766.302(3) defines the class of claimants who can seek NICA benefits on behalf of injured infants:
"Claimant" means any person who files a claim pursuant to s. 766.305 for compensation for a birth-related neurological injury to an infant. Such a claim may be filed by any legal representative on behalf of an injured infant....
And section 766.305(1) provides in pertinent part:
All claims filed for compensation under the plan shall commence by the claimant filing with the division a petition seeking compensation.
Petitioners assert that they can seek NICA benefits for Michael McKaughan because the legislature's use of the phrase "Such a claim may be filed," and, specifically, use of the word "may," does not restrict the class of claimants solely to legal representatives of injured infants. We agree with the district court that petitioners' assertion is inconsistent with the plain language and meaning of the statute. See McKaughan, 652 So.2d at 859-60.
Common sense dictates that claims for NICA benefits would be filed only by a legal representative of the injured infant who is affirmatively seeking such benefits. If petitioners' *978 argument were accepted, then petitioners would be able to assert the McKaughans' rights in a manner wholly contrary to their wishes. Nothing in the legislative findings and intent or the terms of the statute suggests the legislature envisioned that the claims provisions of the NICA statute could be invoked in such a manner. Further, we see nothing in the legislative scheme that indicates the legislature did not intend to create a straightforward administrative system to handle claims for compensation filed by persons who assert they are entitled to NICA benefits.
Petitioners also assert that the language of section 766.304, which mandates that the administrative officer "shall hear and determine all claims," reflects the legislature's intent that the administrative officer have exclusive jurisdiction to determine the nature of an infant's injury. This argument is also inconsistent with the plain language of the NICA statute. First, section 766.301(2) expressly states that the NICA plan "shall apply only to birth-related neurological injuries." As is already apparent in this case, the McKaughans assert that their son has not suffered a "birth-related neurological injury," and is not entitled to NICA benefits. Second, section 766.304 provides:
The hearing officer shall hear and determine all claims filed pursuant to ss. 766.301-766.316 and shall exercise the full power and authority granted to him in chapter 120, as necessary, to carry out the purposes of such sections.
The statutory language clearly limits the jurisdiction of the hearing officer to determining the nature of an infant's injury only when a claim for benefits under section 766.305(1) is filed alleging that the infant has suffered a NICA injury. The McKaughans have not filed such a claim. Consequently, we agree with the district court that the administrative hearing officer correctly determined that he did not have jurisdiction under these circumstances to determine the nature of Michael McKaughan's injury. See McKaughan, 652 So.2d at 859. While there may be persons who erroneously assert that their claims fall outside this compensation plan, there is no clear indication that the legislature intended to prevent those persons from litigating their positions in court.

THE NICA PLAN'S TOLLING PROVISION
Petitioners further assert that a comparison of the NICA plan's tolling provision with the tolling provision of Florida's Workers' Compensation Act indicates that the nature of an infant's injury must be determined by an administrative hearing officer before a civil action can proceed when a defendant health care provider asserts the exclusivity of the NICA plan as an affirmative defense. The NICA plan expressly tolls the limitation period for filing a civil suit when a claim for benefits is filed and while such claim is pending before DOAH or on appeal. § 766.306.[1] Conversely, the workers' compensation scheme does just the opposite, tolling the time for filing a workers' compensation claim while the injured individual pursues a civil remedy. § 440.19(4), Fla.Stat. (1993). Petitioners contend that this difference in tolling provisions demonstrates that the NICA plan requires an administrative hearing officer to determine the nature of an infant's injury before a civil malpractice action can proceed in order to prevent potential NICA claims from becoming time-barred during an unsuccessful civil suit. We do not agree.
We can only speculate as to why the legislature chose to provide a tolling provision for the NICA plan different from the one set out in the workers' compensation scheme.[2] In any case, this difference in tolling *979 provisions is simply insufficient by itself to support the substantial leap required to reach the ultimate conclusion that the issue of whether the claim falls under NICA must be resolved in an administrative hearing rather than in circuit court. Rather, we approve of the district court's basic reasoning that "because both the [NICA] Plan and the workers' compensation system possess common purposes and characteristics and are aimed at accomplishing similar results, albeit in different contexts, we may regard and construe them in pari materia." McKaughan, 652 So.2d at 858. Likewise, we agree with the district court that "because the [NICA] Plan, like the Workers' Compensation Act, is a statutory substitute for common law rights and liabilities, it should be strictly construed to include only those subjects clearly embraced within its terms." Id. at 859.[3] In other words, there is simply no clear indication in the legislative scheme that the nature of the claim is to be determined exclusively in an administrative proceeding.[4]
Further, we agree with the observations of the hearing officer and the district court that should a plaintiff elect to proceed with a medical malpractice claim, as opposed to seeking benefits under the NICA plan, that plaintiff faces the risk that the time for filing a NICA claim may expire while he is unsuccessfully litigating the exclusivity of the remedies afforded by the plan. If it is determined that the claim falls under the plan but the time for filing a claim under the plan has expired, the claimant runs the risk of being without relief. Nonetheless, that election is the exclusive province of the infant's legal representative.

CONCLUSION
To conclude, we cannot agree with petitioners that the NICA plan compels plaintiffs like the McKaughans into an administrative proceeding for NICA benefits notwithstanding their claim that their child has not suffered a "birth-related neurological injury." Consequently, there is nothing to divest the circuit court of its jurisdiction to determine whether a defendant health care provider is immune from suit when the exclusive administrative remedy under the NICA plan is raised as an affirmative defense.[5]
Finally, we concur in the district court's observation:
We are also confident that allowing a circuit court to determine the exclusivity of the Plan as an affirmative defense will not result in a frustration of the legislature's purpose in enacting the Plan. Adverting again to the workers' compensation system, we are not aware of any documented evidence indicating that the legislative goal of this system has been frustrated by the long established law that workers' compensation immunity is an affirmative defense to a traditional tort action. See Pomponio v. Claridge of Pompano Condominium, Inc., 378 So.2d 774, 781 (Fla.1979). Indeed, by continually reenacting the immunity provisions of section 440.11 without abrogating this legal principle, the legislature is presumed to have adopted it as part *980 of the statute. See, e.g., Gulfstream Park Racing Ass'n, Inc. v. Department of Business Regulation, 441 So.2d 627 (Fla.1983). Thus, it is reasonable to conclude that the legislature does not perceive this judicial construction of the statute as an impediment to the efficient operation of the no-fault system it established under the Workers' Compensation Act. Likewise, we do not perceive our conclusion that the Plan's immunity is an affirmative defense to a traditional medical malpractice action to be an impediment to the efficient operation of the Plan.
652 S.2d at 863. In accord with the above, we approve the decision of the district court and hold that the NICA plan does not vest exclusive jurisdiction in an administrative hearing officer to determine the nature of an injury suffered by a new-born infant when a medical malpractice action is filed and a defendant health care provider raises the exclusive remedy of the NICA plan as an affirmative defense. Therefore, we remand this case for further proceedings consistent with this opinion.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING and WELLS, JJ., concur.
NOTES
[1] The NICA plan's tolling provision, section 766.306, states:

The statute of limitations with respect to any civil action that may be brought by, or on behalf of, an injured infant allegedly arising out of, or related to, a birth-related neurological injury shall be tolled by the filing of a claim in accordance with ss. 766.301-766.316, and the time such claim is pending or is on appeal shall not be computed as part of the period within which such civil action may be brought.
Of course, if the limitations period has already expired before a claim is filed, the tolling provisions would appear to have no effect.
[2] We note, however, that the NICA tolling provision furthers the legislature's stated goal of addressing the insurance crisis brought on by medical malpractice litigation. See § 766.301(2). A potential NICA claimant who pursues a civil remedy first, as opposed to filing a claim for NICA benefits, runs the risk of losing all forms of compensation. That is, by the time the potential NICA claimant's medical malpractice action proves unsuccessful, the claimant may be time-barred from subsequently pursuing compensation under the NICA plan. Thus, the present NICA tolling provision encourages potential claimants to seek NICA benefits first. If the claimant receives NICA benefits, the injury is compensated and costly civil litigation is avoided. On the other hand, if the claimant does not qualify for NICA benefits, compensation continues to remain available through a medical malpractice action. In this way, the NICA tolling provisions work to reward prudence on the part of the potential claimant.
[3] The district court also properly took into consideration the fact that Florida's citizens are constitutionally guaranteed access to the courts. Art. I, § 21, Fla. Const.
[4] If we are mistaken in our reading of the legislative scheme, it is up to the legislature to address this issue more specifically at its option.
[5] In so holding we decline the district court's invitation to amend rule 9.130(a)(3), Florida Rules of Appellate Procedure, to provide for immediate review of a nonfinal order determining that a party is not entitled to the NICA plan's immunity.