842 So.2d 148 (2003)
John ROMINE and Rebecca Romine, etc., Appellants,
v.
FLORIDA BIRTH RELATED NEUROLOGICAL INJURY COMPENSATION ASSOCIATION, Appellee.
No. 5D02-1127.
District Court of Appeal of Florida, Fifth District.
February 14, 2003.
Rehearing Denied April 16, 2003.
*149 Scott R. McMillen of McMillen, Reinhart & Voght, P.A., Orlando, for Appellant.
Wilbur E. Brewton and Kelly B. Plante of Brewton, Plante & Plante, P.A., Tallahassee, for Appellee.
ORFINGER, J.
John and Rebecca Romine, individually and as parents and next friends of Loren Romine, a minor, appeal a final administrative order dismissing with prejudice their petition for benefits under the Florida Birth-Related Neurological Injury Compensation Plan ("NICA"), sections 766.301-.316, Florida Statutes (1998).[1] Ruling on stipulated facts, the administrative law judge (ALJ) determined that although Loren suffered a "birth-related neurological injury," the Romines' were precluded from obtaining NICA benefits because they had settled a medical malpractice claim against the doctor and hospital involved in Loren's birth. The sole issue on appeal is whether it was error to retroactively apply the July 1, 1998 amendment to section 766.304, Florida Statutes, barring the recovery of NICA benefits where, as here, there has previously been a civil recovery.
Loren, the infant daughter of John and Rebecca Romine, was born January 26, 1998, with an injury to the brain or spinal cord caused by oxygen deprivation due to a mechanical injury occurring in the course of labor, delivery or resuscitation in the immediate post-delivery period, which rendered her permanently and substantially mentally and physically impaired. Loren's injury was thus compensable under NICA. In December, 1998, the Romines served a notice of intent to initiate litigation for medical negligence pursuant to section 766.106, Florida Statutes (1998), on Dr. Samir Shakfeh, the attending obstetrician, and HCA Health Services d/b/a Columbia Regional Medical Center-Oak Hill, the hospital where Loren was born. Shakfeh and HCA were both participating NICA providers.
After Shakfeh and HCA denied the Romines' claim, suit was filed. Shakfeh and HCA denied liability for Loren's injuries and asserted NICA immunity as an affirmative defense. HCA then filed a motion to abate the civil action until the Romines *150 filed a petition for NICA benefits with the Division of Administrative Hearings (DOAH), and a determination had been made whether Loren suffered an injury compensable by NICA and whether Shakfeh and HCA had complied with NICA's notice provisions. Before the motion to abate was heard by the court, the parties settled the civil suit.[2] The Romines then filed a claim for NICA benefits. NICA responded to the petition for compensation by asserting that the Romines' claim was waived or otherwise barred because of their recovery in the civil action. Additionally, NICA asserted the affirmative defenses of election of remedies, estoppel, and set off.
After considering the parties' stipulation of facts, the ALJ entered a detailed final order, determining that although Loren would have been entitled to receive NICA benefits,[3] she was precluded from doing so because she had already "recovered" in her civil action for medical malpractice against the treating obstetrician, Shakfeh, and the hospital, HCA. While acknowledging that the doctrine of election of remedies did not apply to bar a petition for benefits under the NICA statutes in effect at the time of Loren's birth, the ALJ concluded that chapter 98-113, Laws of Florida, amending chapter 766, effective July 1, 1998, included such a prohibition. Thus, the ALJ found that because the Romines' claim for benefits was filed after the effective date of the statutory amendment, the amendment applied and barred the Romines' claim.
Because the interpretation of a statute is a pure question of law, we review the matter de novo.[4]See Nagy v. Fla. Birth-Related Neurological Injury Comp. Ass'n, 813 So.2d 155, 159 (Fla. 4th DCA 2002). *151 NICA was established by the Legislature to provide no-fault compensation for certain infants who sustained birth-related neurological injuries. See §§ 766.301-.316, Fla. Stat. (1998); see also David M. Studdert, et al., The Jury is Still In: Florida's Birth-Related Neurological Injury Comp. Plan After a Decade, 25 J. Health Pol. Pol'y & L. 499 (June 2000). In its current form, it provides exclusive no-fault benefits to eligible claimants in lieu of the claimants' traditional common law tort rights. See § 766.303(1), (2), Fla. Stat. (1998). See Gilbert v. Fla. Birth-Related Neurological Injury Comp. Ass'n, 724 So.2d 688, 690 (Fla. 2d DCA 1999).
The right to receive NICA compensation is intended to be a substitute for common law rights, which would otherwise be available. As a result, the statutes preclude bringing a civil lawsuit against healthcare providers participating in NICA until after a determination of NICA compensability. Humana of Fla., Inc. v. McKaughan on Behalf of McKaughan, 652 So.2d 852 (Fla. 2d DCA 1995), app'd sub nom. Fla. Birth-Related Neurological Injury Comp. Ass'n v. McKaughan, 668 So.2d 974 (Fla.1996). As it now stands, a claimant cannot assert a NICA claim and make a civil recovery. However, before the July 1, 1998 amendment, a claimant could bring a civil action for birth related neurological injuries until there had been a final determination by the DOAH on the issue of NICA compensability.
NICA's assertion that the doctrine of election of remedies bars the Romines' claim was rejected in Gilbert v. Florida Birth-Related Neurological Injury Compensation Association. In construing the pre-1998 amendment version of NICA, the court held the doctrine of elections of remedies did not bar a NICA eligible claimant from settling his or her case and then seeking benefits under NICA. The court explained:
We first address the issue of whether the receipt of compensation by a "NICA baby" from a source other than NICA "would thwart the purpose of the plan." It clearly does not. Section 766.31(1)(a), Florida Statutes (Supp.1988), recognizes that a NICA infant may receive compensation from other sources, such as state and federal governments and health insurance. It provides that these benefits shall be an offset to benefits under the Plan. The law does not address benefits which may be received from other collateral sources, such as charities, or even from the health care provider on a voluntary basis. Therefore, the fact that Michael has received benefits from other sources, in and of itself, has no effect on his entitlement to Plan benefits.
The sole issue is whether the obtaining of benefits as a product of a civil action forecloses access to Plan benefits. The answer is yes if that action resulted in a factual determination that the infant was not a NICA baby. Conversely, if an administrative petition results in a determination that the infant is a NICA baby, a civil action is foreclosed. The remedies are mutually exclusive, but only upon a determination of whether the infant is a NICA baby.
* * *
Finally, the facts of this case do not fit within the law of election of remedies. Our leading authority in this area is Williams v. Robineau, 124 Fla. 422, 168 So. 644, 646 (Fla.1936), where the court explained:
An election of remedies presupposes a right to elect. It is a choice shown by an overt act between two inconsistent rights, either of which may be asserted at the will of the *152 chooser alone. It is generally conceded that to be conclusive it must be efficacious to some extent. A position taken which does not injure the opposite party is not an election which precludes a change or raises an estoppel. The election is matured when the rights of the parties have been materially affected to the advantage of one or the disadvantage of the other.
Here, the guardian's positions in the civil action and the administrative proceeding were inconsistent, but he did not have the option of choosing his theory of recovery. His theory of recovery was dependent upon the determination of whether Michael met the statutory definition of a NICA baby. Michael's remedies, therefore, were not coexistent and inconsistent as is required to apply the election of remedies doctrine. See Barbe v. Villeneuve, 505 So.2d 1331 (Fla. 1987).
The fact that the defendants in the civil action elected to "buy their way out" of possible liability in no way adversely affects NICA. NICA has no more or no less liability now then it did absent the civil action. Thus, the doctrine of election of remedies does not apply. Therefore, we reverse the administrative law judge's summary order dismissing the petition for benefits under the Plan and remand for the resolution of factual issues which will determine NICA's liability.
Gilbert, 724 So.2d at 690-92.
In an effort to prevent the recurrence of the Gilbert situation, the Legislature amended section 766.304 in 1998 to preclude both a civil and a NICA claim recovery:
The administrative law judge shall hear and determine all claims filed pursuant to ss. 766.301-766.316 and shall exercise the full power and authority granted to her or him in chapter 120, as necessary, to carry out the purposes of such sections. The administrative law judge has exclusive jurisdiction to determine whether a claim filed under this act is compensable. No civil action may be brought until the determinations under s. 766.309 have been made by the administrative law judge. If the administrative law judge determines that the claimant is entitled to compensation from the association, no civil action may be brought or continued in violation of the exclusiveness of remedy provisions of s. 766.303. If it is determined that a claim filed under this act is not compensable, neither the doctrine of collateral estoppel nor res judicata shall prohibit the claimant from pursuing any and all civil remedies available under common law and statutory law. The findings of fact and conclusions of law of the administrative law judge shall not be admissible in any subsequent proceeding; however, the sworn testimony of any person and the exhibits introduced into evidence in the administrative case are admissible as impeachment in any subsequent civil action only against a party to the administrative proceeding, subject to the Rules of Evidence. An action may not be brought under ss. 766.301-766.316 if the claimant recovers or final judgment is entered. The division may adopt rules to promote the efficient administration of, and to minimize the cost associated with, the prosecution of claims.
Ch. 98-113, § 1, at 524, Laws of Fla. (emphasis added).[5] In doing so, the Legislature *153 expressed its clear intent that the amendment be retroactively applied to any NICA claim filed on or after July 1, 1998, regardless of when the child was born:
Section 6. The amendments to section 766.301 and 766.304, Florida Statutes, shall take effect July 1, 1998, and shall apply only to claims filed before or after that date and to that extent shall apply retroactively regardless of the date of birth.
Ch. 98-113, § 6, at 525, Laws of Fla.
The 1998 amendment to section 766.304, if applicable to the Romines' claim, significantly changes their ability to recover under NICA. Prior to the 1998 amendments, the Romines could have recovered both under NICA and in a civil action. See Gilbert, 724 So.2d at 690. However, the 1998 amendment, if applicable, bars the Romines from receiving NICA benefits because they recovered a settlement in their medical malpractice case.
The Romines argue that a retroactive application of the 1998 amendment to section 766.304 would materially alter their substantive rights to receive benefits under NICA. NICA asserts that the ALJ correctly applied the 1998 amendment to section 766.304 because it is clear that the Legislature intended the amendment to section 766.304 to be retroactive. NICA further contends that the amendment is purely procedural and did not change substantive rights to compensation.
When determining whether statutes should be retroactively applied, two inquiries arise. Metro. Dade County v. Chase Fed. Hous. Corp., 737 So.2d 494, 499 (Fla.1999). See Campus Communications, Inc. v. Earnhardt, 821 So.2d 388, 395 (Fla. 5th DCA 2002). The first is a question of statutory construction and requires the application of a legal presumption that statutes, in the absence of clear legislative intent to the contrary, should apply prospectively. See id. If the Legislature clearly expresses an intent that the statute applies retroactively, the court must then determine whether retroactive application is constitutionally permissible. Chase Fed., 737 So.2d at 499 (citing State Farm Mut. Auto. Ins. v. Laforet, 658 So.2d 55, 61 (Fla.1995)). Courts will not permit the retroactive application of a statute if the statute impairs vested rights, creates new obligations, or imposes new penalties, even when the Legislature expressly states that a statute is to have retroactive application. See Laforet, 658 So.2d at 61; see also Chase Fed.; McCord v. Smith, 43 So.2d 704, 708-09 (Fla.1949).
Here, chapter 98-113, section 6, expressly provides for the retroactive application of section 776.304. Therefore, we need not apply the general rules of construction to the statute or indulge the presumption in favor of prospective application.[6]See *154 Chase Fed., 737 So.2d at 500 ("Of course, where the language of a statute contains an express command that the statute is retroactive, there is no need to resort to these canons of statutory construction."). Our task is only to determine if retroactive application of section 766.304 is constitutionally permissible.
A complete understanding of the constitutional limitations on the Legislature's ability to enact a statute with retroactive application requires an appreciation of the differences between procedural and substantive rights. In Alamo Rent-A-Car, Inc. v. Mancusi, 632 So.2d 1352, 1358 (Fla.1994), the supreme court said that "substantive law prescribes duties and rights and procedural law concerns the means and methods to apply and enforce those duties and rights." A substantive, vested right is "an immediate right of present enjoyment, or a present, fixed right of future enjoyment." City of Sanford v. McClelland, 121 Fla. 253, 163 So. 513, 514-15 (1935). "[T]o be vested, a right must be more than a mere expectation based on an anticipation of the continuance of an existing law; it must have become a title, legal or equitable, to the present or future enforcement of a demand...." Div. of Workers' Comp., Bureau of Crimes Comp. v. Brevda, 420 So.2d 887, 891 (Fla. 1st DCA 1982) (quoting Aetna Ins. Co. v. Richardelle, 528 S.W.2d 280, 284 (Tex.Civ.App.1975)). Within the context of the constitutional proscription against retrospective application of legislation, a vested right is a "fixed" right that cannot be abrogated or taken away without violation of the possessor's right to due process. Campus Communications, Inc., 821 So.2d at 398 (citing Chase Fed., 737 So.2d at 503 ("Generally, due process considerations prevent the State from retroactively abolishing vested rights.") (citation omitted)).
Because NICA has long been compared to the workers' compensation system, cases construing the workers' compensation statutes provide us with guidance. Fla. Birth-Related Neurological Injury Comp. Ass'n v. Carreras, 633 So.2d 1103, 1107 (Fla. 3d DCA 1994) (the NICA's no-fault system "is one comparable to the workers' compensation system"). The general rule in workers' compensation cases is that the substantive rights of the parties are fixed by the law in effect on the date of the injury, but that no party has a vested right in any particular procedure. Consequently, procedural amendments may be applied retroactively. McCarthy v. Bay Area Signs, 639 So.2d 1114, 1115-16 (Fla. 1st DCA 1994).
Under NICA, an injured infant or his personal representative may seek compensation under NICA by filing a claim for compensation with the DOAH within five years of the infant's birth. See §§ 766.302(3), 766.305(1), & 766.313, Fla. Stat. (1998). The date of the child's birth and the injuries sustained at that birth, if any, establish the right of the infant to receive NICA benefits and the scope of those benefits. Thus, we conclude that the Romines had a substantive, vested right the day Loren was born, because they had "a present, fixed right of future enjoyment" to receive NICA benefits if she was otherwise qualified to receive such benefits. See Brevda, 420 So.2d at 891. We conclude that the amendment is more than *155 a mere change in procedure; rather, it changes the right itself.[7]
For the foregoing reasons, we conclude that the ALJ erred in applying the 1998 amendment to section 766.304, Florida Statutes (1998), to bar the Romines' claim. We remand this matter to the DOAH for further proceedings consistent herewith.
REVERSED AND REMANDED.
SHARP, W., and GRIFFIN, JJ., concur.
NOTES
[1] In section 766.315, Florida Statutes, the Legislature created the Florida Birth-Related Neurological Injury Association (NICA), the appellee, to administer NICA. See §§ 766.315, 766.302, Fla. Stat.
[2] NICA was not a party to the settlement agreement, nor was it advised of, nor did it participate in the hearing on the petition to approve settlement. The written agreement between the Romines and HCA included the following language:

The parties agree that no part of the Settlement is intended to impair in any manner plaintiff's rights to pursue NICA benefits nor is it intended to be a release of any NICA benefits that may be due plaintiffs. It has always been and remains the position of the Defendant that this claim is covered by NICA. The Defendant agrees that it will take no action and refrain from doing anything to defeat plaintiff's NICA claim in any way....
The written agreement between the Romines and Shakfeh contained a similar provision.
[3] The ALJ stated that the parties had stipulated, and the proof was otherwise compelling, that Loren sustained a "birth-related neurological injury," as that term is defined in the NICA statute.
[4] We observe, as did the court in Gugelmin v. Division of Administrative Hearings, 815 So.2d 764 (Fla. 4th DCA 2002), that the ALJ had jurisdiction to determine only:

(1) whether the injury claimed is a birth related neurological injury;
(2) whether the obstetrical services were delivered by a participating physician during the course of labor, delivery, or resuscitation, and
(3) the amount of compensation, if any, awardable under the statute.
§ 766.309, Fla. Stat. (1999). Thus, although section 766.304 grants exclusive jurisdiction to the ALJ to determine whether a claim is compensable under NICA, there is nothing in the statutory scheme that gives the ALJ authority to determine the impact of those findings on a claimant's common law rights and remedies. Rather, decisions regarding a claimant's election of remedies ultimately reside with the circuit court. Gugelmin, 815 So.2d at 767.
However, under section 120.68(7), Florida Statutes (1998), we are authorized to set aside or modify a final agency action, such as the final order at issue in this case, if we find that the ALJ's interpretation of the NICA statute is erroneous. See § 120.68(7), Fla. Stat. (1998). We, therefore, have authority to address the issue of law before us.
[5] For purposes of clarity, this statute was later amended. See § 766.304, Fla. Stat. (Supp.1998).
[6] In Metropolitan Dade County v. Chase Federal Housing Corporation, 737 So.2d 494 (Fla. 1999), the Florida Supreme Court recognized that "when `an amendment to a statute is enacted soon after controversies as to the interpretation of the original act arise, a court may consider that amendment as a legislative interpretation of the original law and not as a substantive change thereof.'" Id. at 503 (quoting Lowry v. Parole & Probation Comm'n, 473 So.2d 1248, 1250 (Fla.1985) (emphasis in original)). Relying on this case, NICA argues that the 1998 amendment could be read as clarifying the original legislative intent regarding the operation of NICA. In O-Leary v. Florida Birth-Related Neurological Injury Compensation Association, 757 So.2d 624, 626-27 (Fla. 5th DCA 2000), we held that the Legislature, by amending section 766.304 to grant exclusive jurisdiction to an administrative law judge to determine whether a claim filed under this act is compensable, clearly meant to correct the dual jurisdiction problem that existed under Florida case law. We believe that NICA is correct when it argues that the Legislature amended section 766.304 to provide an exclusive no-fault benefit in lieu of traditional common law tort rights. However, that does not address whether the July 1, 1998 amendment to section 766.304 can be retroactively applied to a child born earlier to preclude NICA benefits when there has previously been a civil recovery.
[7] The NICA statute was proposed by the 1987 Academic Task Force for Review of the Insurance and Tort Systems. Galen of Fla. Inc. v. Braniff, 696 So.2d 308, 310 (Fla.1997); Gilbert, 724 So.2d at 692 n. 1 (citing Galen). In its November 6, 1987 report, the Task Force recommended adoption of a no-fault compensation plan for birth-related neurological injuries similar to the then newly enacted Virginia plan (1987 Va. Acts Ch. 540). Id. A Virginia appellate court recently held that amendments to the Birth-Related Neurological Injury Compensation Act, which provided exclusive remedy for claims against participating neurological injury, did not apply retroactively, and, thus, the wrongful death cause of action by the estate of infant, which accrued prior to the enactment of the amendment, was not barred. See Berner v. Mills, 38 Va.App. 11, 560 S.E.2d 925 (2002). Our analysis in this case appears consistent with the Virginia court.