ON MOTIONS FOR REHEARING AND FOR CLARIFICATION

STEVENSON, J.
Following the issuance of this court’s opinion, appellants filed both a motion for rehearing and a motion for clarification. We deny both motions in their entirety. Nonetheless, we withdraw our prior opinion and issue the following in its place to correct a typographical error.
In July of 1994, Stella Gugelmin gave birth to twin sons — Bernardo and Giuliano. Unfortunately, there were complications during the birth of the second child, Giuli-ano, and he sustained brain or spinal cord injuries due to oxygen deprivation. It was eventually determined that Giuliano had sustained a birth-relatéd neurological injury, as defined by section 766.302(2), Florida Statutes. The issue in this appeal is whether the Gugelmins may accept a settlement in their medical malpractice suit and still recover the benefits provided under Florida’s Birth-Related Neurological Injury Compensation Plan (“NICA”). The trial court determined that, under the circumstances of this case, the parents could not recover both the civil settlement and NICA benefits, requiring them to elect a remedy. We affirm this decision.

Florida’s Birth-Related Neurological Injury Compensation Plan

In 1988, the Florida Legislature created the Florida Birth-Related Neurological Injury Compensation Plan. See § 766.301(1), Fla. Stat. (Supp.1988). The statute authorized no-fault compensation for birth-related neurological injuries, but “exclude[d] all other rights and remedies ... arising out of or related to a medical malpractice claim with respect to such injury....” § 766.303(2), Fla. Stat. (Supp. 1988).
At the time of Giuliano’s July 1994 birth, NICA’s exclusive remedy provision provided as follows:
The rights and remedies granted by this plan on account of a birth-related neurological injury shall exclude all other rights and remedies ... against any person or entity directly involved with the labor, delivery, or immediate postde-livery resuscitation during which such injury occurs, arising out of or related to a medical malpractice claim with respect to such injury....
§ 766.303(2), Fla. Stat. (1993).
In 1998, the legislature substantially amended NICA’s exclusive remedy provisions. While the above-cited language of section 766.303(2) remained the same, the legislature amended section 766.304, vesting the administrative law judge with exclusive jurisdiction to determine whether the child had suffered a birth-related neurological injury. See § 766.304, Fla. Stat. (Supp.1998). If the administrative law judge finds that the child has sustained a birth-related neurological injury, then a civil action may not be “brought or continued.” Id. Further, the 1998 amendments specifically bar a claim for NICA benefits in the event that “the claimant recovers or *519 final judgment is entered.” [1]

The Procedural History in the Instant Case

In February 1997, as a consequence of their son’s injuries, the Gugelmins filed a medical malpractice suit against Dr. Eric Freling, the physician who delivered the twins, and his professional association, Weinger, Zelnick and Freling, P.A. (hereinafter “the Freling defendants”). In the spring of 1999, the Freling defendants tendered a $250,000 check to settle the malpractice claim. The Gugelmins conditioned acceptance of the settlement upon their ability to also recover NICA benefits.
Thus, in June 1999, the Gugelmins filed a petition for benefits with the Division of Administrative Hearings. NICA agreed the child had sustained a birth-related neurological injury, but, in light of the exclusive remedy provision, contended that the settlement tendered by the Freling defendants precluded payment of benefits. In September 2000, an administrative law judge (ALJ) found that the child had sustained a birth-related neurological-injury and, applying the 1998 amendments to the NICA statutes, determined that; ordinarily, this would preclude a .civil suit. The ALJ went on to find that there are two exceptions to the statute’s exclusive remedy provisions; bad faith and the physician’s failure to give notice. Here, the physician had not provided notice. Consequently, the ALJ determined that the Gu-gelmins could either proceed in the civil suit and accept the Freling defendants’ settlement or they could accept NICA benefits — they could not, however, do both.[2]
The Gugelmins ' appealed, arguing that the ALJ’s determination that they had to elect between the civil settlement and NICA benefits was in excess of his jurisdiction. This court agreed that any determination regarding election of remedies must be made by a circuit court, reversing that portion of the ALJ’s order. See Gugelmin v. Div. of Admin. Hearings, 815 So.2d 764 (Fla. 4th DCA 2002).
In- March of 2000, during the pendency of the administrative proceedings, the Gu-gelmins were granted leave to amend their complaint and to add NICA as a defendant in the civil suit. By the time the Second Amended Complaint was filed in January-2001, the Gugelmins had added a claim for declaratory relief, regarding their right to recover both the civil settlement and NICA benefits, and a new negligence theory. . Originally, the Gugelmins had alleged that both Dr. Freling and his professional association were responsible for Dr. Frel-ing’s negligence in delivering the twins. In the new version, the Gugelmins added a claim that Dr. Freling’s professional association was responsible for1 the actions of Dr. Waldman, the employee' physician who initially agreed to deliver the twins and then “abandoned” them.
NICA filed a motion to strike the claim pertaining to Dr. Waldman, alleging that (1) this was an improper attempt to state a *520 new cause of action, (2) Dr. Waldman was not a party, (8) the statute of limitations had run on any claim against Dr. Wald-man, and (4) the plaintiffs had failed to comply with the pre-suit requirements that are a condition precedent to any claim against Waldman. NICA also argued that those counts wherein the plaintiffs sought a declaration that NICA’s proposed construction of the statute failed to account for the negligence allegations pertaining to Dr. Waldman and denied the plaintiffs access to the courts should be stricken as ah improper collateral attack on the ALJ’s September 2000 order. Finally, NICA asserted that the Gugelmins should be forced to elect a remedy.
In November 2002, the trial court granted NICA’s motions to strike and to dismiss and ruled that the Gugelmins could either accept NICA benefits or proceed in the civil suit, but they could not do both. Thereafter, under protest, the Gugelmins elected to accept NICA benefits. This appeal followed. The Gugelmins have raised a number of challenges to the trial court’s order. We affirm the judgment in all respects and write to address a single issue — the Gugelmins’ contention that, under the NICA statutes in effect at the time of their son’s 1994 birth, they were entitled to both the civil settlement and NICA benefits and, thus, that the trial court erred in forcing them to elect a remedy.

The Gugelmins’ Entitlement to Recover Both Civil Damages and NICA Benefits under the 1991 NICA Statutes

Following the 1998 amendments to NICA, it is clear that a plaintiffs aecep-tance of a civil settlement bars a claim for NICA benefits. In Gilbert v. Florida Birth-Related Neurological Injury Compensation Ass’n, 724 So.2d 688 (Fla. 2d DCA 1999), however, the Second District concluded that there was a loophole of sorts in the pre-1998 NICA statutes; this loophole allowed a plaintiff to recover NICA benefits where the plaintiff first settled and disposed of the malpractice claim without there having been a determination as to whether the child had sustained a birth-related neurological injury. The Gugelmins assert that since their son was born prior to the 1998 amendments,[3] they, too, fit within this loophole and, thus, they should have been permitted to both retain the civil settlement and recover NICA benefits.
The procedural posture of the Gilbert decision is rather protracted. Michael McKaughan was born on May 19, 1989; the child was a quadriplegic and suffered substantial mental impairment. In January 1992, Michael’s parents filed a medical malpractice suit. The defendants countered that the suit was barred by NICA, which provides the exclusive remedy for birth-related neurological injuries. The malpractice suit was stayed and Michael’s parents were directed to file an administrative petition for NICA benefits.
Michael’s parents did file the NICA petition as directed; however, they alleged that their son had not suffered a birth-related neurological injury as defined by NICA. As a consequence, the administra *521 tive law judge dismissed the petition. The Second District affirmed the dismissal, holding that it was for the circuit court, in the malpractice suit, to determine whether the child had sustained a birth-related neurological injury and whether NICA provided the exclusive remedy. See Humana of Fla., Inc. v. McKaughan ex rel. McKaughan, 652 So.2d 852 (Fla. 2d DCA 1995).[4]
The malpractice suit resumed and a guardian ad litem was appointed to represent the interests of the child. In May 1996, the guardian ad litem filed a second petition for NICA benefits. The administrative proceedings were stayed, however, pending a Florida Supreme Court decision addressing pre-delivery notice of NICA participation. . The civil proceedings, though, continued. Prior to trial, Michael’s parents reached a settlement and the civil suit was dismissed with prejudice. There was no judicial determination regarding whether the child had sustained a birth-related neurological injury.
After the settlement was reached, the stay was lifted in the administrative proceedings. Among other things, the parties stipulated that the parents had settled and dismissed the malpractice suit without any judicial determination as to whether the child had sustained a birth-related neurological injury and that the guardian ad litem had participated in the settlement. The administrative law judge dismissed the petition for NICA benefits, finding that the claim was barred by the doctrine of election of remedies and that to permit the NICA petition to proceed following the civil settlement would thwart the purposes of the statute. The guardian ad litem appealed. , . ■ ■
' When the’case once again returned to the Second District, the court rejected the administrative law judge’s conclusion that the NICA claim was barred. In so doing, the court reasoned as follows:
The sole issue is whether the obtaining of benefits as a product of a civil action forecloses access to Plan benefits. The answer is yes if that.action resulted in- a factual determination that the infant was not a NICA baby. Conversely, if an administrative petition results in a determination that the infant- is a NICA baby, a civil action is foreclosed. The remedies are mutually exclusive, but only upon a determination of whether the infant is a NICA baby. That is the core issue of both the civil action and the administrative petition.
724 So.2d at 690.
The instant case is factually distinguishable from Gilbert. In Gilbert, the court held that the earlier civil settlement did not bar the petition for NICA benefits because the suit was dismissed without there ever having been a determination as to whether the child had sustained a birth-related neurological .injury. That is not the case here where the settlement was never approved by the court and the medical malpractice suit remained pending. It is true that the Freling defendants tendered a $250,000 check in settlement of the civil suit. The Gugelmins themselves, however, took the position that the settle *522 ment was conditional. Further, Giuliano’s guardian ad litem objected to the court’s approval of any settlement until it was determined whether the child’s injuries were compensable under NICA.
During the pendency of the civil suit, the ALJ determined that Giuliano Gugelmin had suffered a birth-related neurological injury as defined by NICA. The ALJ’s determination in this regard brings the instant case under that portion of the Gilbert opinion wherein the Second District held that “if an administrative petition results in a determination that the infant is a NICA baby, a civil action is foreclosed.” 724 So.2d at 690. Thus; even under the statutes in effect at the time of Giuliano’s birth and the Gilbert decision, were it not for the Freling defendants’ failure to comply with NICA’s notice provisions — a condition precedent to application of NICA and its exclusive remedy provisions,' the Gugelmins would be limited to only NICA benefits.
The holding in this case is consistent with the outcome in Romine v. Florida Birth Related Neurological Injury Compensation Ass’n, 842 So.2d 148 (Fla. 5th DCA), review denied, 857 So.2d 195 (Fla.2003). There, the court held that under the statute in effect prior to the 1998 amendments, the Romines were not precluded from receiving NICA benefits simply because they had already received a settlement in their medical malpractice case. The Romine court noted that in construing the pre-1998 version of NICA, Gilbert held that a NICA eligible claimant was not barred from receiving a recovery in a malpractice case (with no judicial determination that the child was not a NICA baby) and then seeking- benefits under NICA. Nevertheless, the court in Romine, citing Gilbert, recognized that a claimant could not obtain an administrative determination of NICA eligibility and then still be entitled to maintain a civil lawsuit. See 842 So.2d at 151. That is what the Gugel-mins attempt to do.
Accordingly, the order on appeal is AFFIRMED.
STONE and WARNER, JJ., concur.

. The current version of the statute provides that "[a]n award may not be made or paid under ss. 766.301-766.316 if the claimant recovers under a settlement or a final judgment is entered in a civil action.” § 766.304, Fla. Stat. (2003).

. From its inception through the June 1999 NICA petition filed in this case, there have been two conditions precedent to the application of NICA and its exclusive remedy provision: (1) the child must have sustained a birth-related neurological injury as defined by section 733.302(2) and (2) the defendant health care provider must have provided the patient with notice = of the provider's participation in NICA. See §§ 766.302(2), 766.303(2), 766.316, Fla. Stat. (1988); §§ 766.302(2), 766.303(2), 766.316, Fla. Stat. (1997 & Supp.1998); Galen of Fla., Inc. v. Braniff, 696 So.2d 308 (Fla.1997).

. In enacting the 1998 amendments, the legislature expressly stated that the amendments should apply to any NICA claim filed on or after July 1, 1998, regardless of the date of birth of the child. See Ch. 98-113, § 6, at 525, Laws of Fla. We note that in Romine v. Florida Birth Related Neurological Injury Compensation Ass’n, 842 So.2d 148 (Fla. 5th DCA), review denied, 857 So.2d 195 (Fla.2003), the Fifth District held that these 1998 amendments could not be retroactively applied to a child bom prior to the passage of the amendments. As we have concluded that the Gugelmins were not entitled to both the civil settlement and NICA benefits under either the statutes in effect at the time of their son's 1994 birth or the 1998 amendments, we need not reach this issue.

. The Second District certified the issue to the supreme court. The supreme court affirmed, holding that “the NICA plan does not vest exclusive jurisdiction in an administrative hearing officer to determine the nature of an injury suffered by a new-born infant when a medical malpractice action is filed and a defendant health care provider raises the exclusive remedy of the NICA plan as an affirmative defense.” Fla. Birth-Related. Neurological Injury Comp. Ass’n v. McKaughan, 668 So.2d 974, 980 (Fla.1996). It was the supreme court’s decision in McKaughan that prompted the. 1998 amendments to section 766.304, Florida Statutes. See S.B. 1070, Senate Staff Analysis and Economic Impact Statement (Mar. 4, 1998).